BLANKENSHIP ET AL., APPELLANTS, *v.*
CINCINNATI MILACRON CHEMICALS, INC., ET AL., APPELLEES.

[Cite as Blankenship v. Cincinnati Milacron Chemicals (1982),
69 Ohio St. 2d 608.]

(No. 81-402—Decided March 3, 1982.)

610

*Kondritzer, Gold & Frank Co., L.P.A., Mr. William E. Clements, Jerald D. Harris Co., L.P.A., and Mr. Jerald D. Harris,* for appellants.

*Messrs. Taft, Stettinius & Hollister* and *Mr. Gerald J. Rapien,* for appellees.

WILLIAM B. BROWN, J. The sole issue raised in this appeal is whether the trial court properly granted appellees' motion to dismiss appellants' complaint on the grounds that an employee is barred by Section 35, Article II of the Ohio Constitution, and R. C. 4123.74 and 4123.741 from prosecuting an action at law for an intentional tort.

At the outset, it must be remembered that the appellants are appealing from an order granting a motion to dismiss pursuant to Civ. R. 12(B)(1) and (6). In *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242, this court stated that "[i]n order for a court to dismiss a complaint

for failure to state a claim upon which relief can be granted (Civ. R. 12[B][6]), it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. (*Conley* v. *Gibson,* 355 U. S. 41, followed.)" And, in *Steffen* v. *General Telephone Co.* (1978), 60 Ohio App. 2d 144, 145, it was stated that, in considering a motion which claims lack of jurisdiction over the subject matter (Civ. R. 12[B][1]), "a similar principle controls: * * * the question is whether the plaintiff has alleged any cause of action cognizable by the forum."

Thus, the purpose of this appeal is not to try the factual issues presented by this complaint, but rather to determine whether the facts alone are sufficient to withstand a motion based on Civ. R. 12(B)(1) and (6). After carefully reviewing the complaint and seriously considering the arguments presented, this court, for the reasons stated hereinafter, finds that the complaint in question is sufficient to withstand such a challenge.

The primary focus of the dispute between the parties centers upon the question of whether the Workers' Compensation Act (R. C. 4123.35 *et seq.*) is intended to cover an intentional tort committed by employers against their employees. Section 35, Article II of the Ohio Constitution, serves as a basis for legislative enactments in the area of workers' compensation by providing, in pertinent part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease. * * * "

The constitutional mandate has been implemented by R. C. 4123.74 which provides:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, *received or contracted by any employee in the course of or arising out of his employment* * * * whether or not such injury, occupational disease [or] bodily condition * * * is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code." (Emphasis added.)[6]

Clearly, neither the relevant constitutional language nor the pertinent statutory language expressly extend the grant of immunity to actions alleging intentional tortious conduct by employers against their employees. The General Assembly, however, in enacting R. C. 4123.95, established a rule of construction which is clearly of assistance in determining the scope of employer immunity. This section provides that:

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code, shall be liberally construed in favor of employees and the dependents of deceased employees."

It is with this requirement in mind that we address the language in R. C. 4123.74. The emphasized language in R. C. 4123.74 quoted above, as was noted in *Delamotte* v. *Midland Ross* (1978), 64 Ohio App. 2d 159, 161, " * * * clearly limits the categories of injuries for which the employer is exempt from civil liability." By designating as compensable only those injuries " * * * received or contracted * * * in the course of or arising out of * * * employment * * * ,'" the General Assembly has expressly limited the scope of compensability. In so doing, the General Assembly surely did not intend to remove all remedies from the employee whose injury is not compensable under the Act.[7] And, by its use of this phrase, the

---

[6] The emphasized language was added to the statute in 1959. (128 Ohio Laws 743, 770.)

R. C. 4123.741 is also relevant to the resolution of this case. That section provides that:

"No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, * * * on the condition that such injury, occupational disease or death is found to be compensable under sections 4123.01 to 4123.94, inclusive of the Revised Code."

[7] As was stated in *Mercer* v. *Uniroyal, Inc.* (1976), 49 Ohio App. 2d 279, 285,

General Assembly has seemingly allowed the judiciary the freedom to determine what risks are incidental to employment in light of the humanitarian purposes which underlie the Act.

In this regard, this court further agrees with the *Delamotte* court that where an employee asserts in his complaint a claim for damages based on an intentional tort, " * * * the substance of the claim is not an 'injury * * * received or contracted by any employee in the course of or arising out of his employment' within the meaning of R. C. 4123.74 * * * ." *Id.* No reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee nor would such individual contemplate the risk of an intentional tort as a natural risk of employment.[8] Since an employer's intentional conduct does not arise out of employment, R. C. 4123.74 does not bestow upon employers immunity from civil liability for their intentional torts and an employee may resort to a civil suit for damages. Accord *Barley* v. *Harrison Manufacturing* (No. E-80-75, May 22, 1981), Sixth District Court of Appeals,

---

" * * * [w]hen the initiating cause is not a hazard of employment, there is no causal connection between the employment and the injury."

Thus, at some point, the employment relationship terminates and the intentionally inflicted injury cannot be considered compensable under a system that has been promulgated to insure against accidents which occur within the scope of employment.

Appellees cite *Greenwalt* v. *Goodyear Tire & Rubber Co.* (1955), 164 Ohio St. 1, as authority for their position. This case is, however, factually distinguishable. The intentional misconduct of the employer in *Greenwalt* amounted to fraud perpetrated toward the employee that deprived the employee of workers' compensation benefits. Whereas the intentional conduct in *Greenwalt* involved omission, the intentional conduct alleged herein involved commission. Here, the employees allegedly suffered direct physical harm as a result of the alleged intentional torts of their employer.

[8] In *Toth* v. *Standard Oil Co.* (1953), 160 Ohio St. 1, 5, this court stated that "injury" as used in the Ohio Workers' Compensation Act, comprehends a physical or traumatic damage or harm, accidental in its character in the sense of being unforeseen, unexpected and unusual.

An intentional tort, then, is clearly not an "injury" arising out of the course of employment. This very point was recognized in *Boek* v. *Wong Hing* (1930), 180 Minn. 470, 231 N.W. 233, wherein it was stated, at page 471, that it would be a "perversion of" the Workmen's Compensation Act's purpose to allow employers immunity from intentional torts. Indeed, it would be travesty on the use of the English language to allow someone who intentionally inflicts an injury on another to call the injury a work incident.

unreported; *Pariseau* v. *Wedge Products, Inc.* (No. 43195, May 7, 1981), Eighth District Court of Appeals, unreported.[9]

This holding not only comports with constitutional and statutory requirements, but it is also consistent with the legislative goals which underlie the Workers' Compensation Act.

The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act. The Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability.[10] But the protection afforded by the Act has always been for negligent acts and not for intentional tortious conduct.[11] Indeed, workers' compensation Acts were designed to improve the plight of the injured worker, and to hold that intentional torts are covered under the Act would be tantamount to encouraging such conduct, and this clearly cannot be reconciled with the motivating spirit and purpose of the Act.

It must also be remembered that the compensation scheme was specifically designed to provide less than full compensation for injured employees.[12] Damages such as pain and suffer-

[9] See, also, *Boek* v. *Wong Hing, supra; Artonio* v. *Hirsch* (1957), 163 N.Y. Supp. 2d 489, 3 A.D. 2d 939; *Cohen* v. *Lion Products Co.* (D.C. Mass. 1959), 177 F. Supp. 486; *Skelton* v. *W. T. Grant Co.* (C.A. 5, 1964), 331 F. 2d 593; 2A Larson, Workmen's Compensation Law 13-1, Section 68.

[10] 2A Larson, Workmen's Compensation Law 12-1, Section 65.10, at 12-4.

[11] As was stated in *Mandolidis* v. *Elkins Industries, Inc.* (W. Va. 1978), 246 S.E. 2d 907, 913:

"The workmen's compensation system completely supplanted the common law tort system only with respect to *negligently* caused industrial accidents, and employers and employees gained certain advantages and lost certain rights they had heretofore enjoyed. Entrepreneurs were not given the right to carry on their enterprises without any regard to the life and limb of the participants in the endeaver and free from all common law liability." (Emphasis *sic.*)

[12] This court stated in *State, ex rel. Crawford,* v. *Indus. Comm.* (1924), 110 Ohio St. 271, 275, that:

" * * * [Workers' Compensation] was never intended by the most ardent advocates of * * * [it] to give full and adequate remuneration, because this would remove

ing and loss of services on the part of a spouse are unavailable remedies to the injured employee. Punitive damages cannot be obtained. Yet, these damages are available to individuals who have been injured by intentional tortious conduct of third parties, and there is no legitimate reason why an employer should be able to escape from such damages simply because he committed an intentional tort against his employee.

In addition, one of the avowed purposes of the Act is to promote a safe and injury-free work environment. (R. C. 4101.11 and 4101.12.)[13] Affording an employer immunity for his intentional behavior certainly would not promote such an environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise slightly.

Moreover, as this court noted in *State, ex rel. Crawford,* v. *Indus. Comm.* (1924), 110 Ohio St. 271, 274, workers' compensation " * * * is founded upon the principle of insurance * * * ."[14] An insurance policy does not protect the policy holder from the consequences of his intentional tortious act. Indeed, it would be against public policy to permit insurance against the intentional tort. See, generally, *Northwestern National Cas. Co.* v. *McNulty* (C.A. 5, 1962), 307 F. 2d 432.

The use of the element of intent in workers' compensation is in no way novel. Under R. C. 4123.54, an employee is denied benefits when he inflicts an injury upon himself intentionally. This section thus illustrates that intent plays an important role in the determination of whether an injury is compensable.

In conclusion, it is for the trier of fact to initially determine whether the alleged conduct constitutes an intentional injury. In the instant case, the facts will demonstrate whether an intentional tort occurred or whether the injuries received by appellants were incurred in the course of and arising from appellants' employment such that the worker's compensation remedy would be exclusive. These questions of fact, however,

much of the inducement of * * * [workers] to exercise care and caution on their own part."

[13] Not only is an employer required to provide a safe workplace under Ohio law, but under federal law, no employee may be discriminated against because he refuses to work when he has a reasonable belief that his health and safety are in jeopardy. See *Whirlpool Corp.* v. *Marshall* (1980), 445 U. S. 1.

[14] See, also, R. C. 4123.29.

are not properly determinable by a Civ. R. 12(B)(6) motion to dismiss, for the lower court had before it insufficient facts to determine as a matter of law that appellants' complaint was barred. Appellants should be given an opportunity to prove their allegations that their employer committed an intentional tort causing them injury.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and this cause is remanded for further proceedings according to law.

*Judgment reversed.*

CELEBREZZE, C. J., SWEENEY and C. BROWN, JJ., concur.

LOCHER, J., concurs in part and dissents in part.

HOLMES and KRUPANSKY, JJ., dissent.

CELEBREZZE, C. J., concurring. I enthusiastically agree with the syllabus, content and conclusion of the majority opinion that workers injured by an employer's intentional or malicious action may sue the employer for common law damages and that the Workers' Compensation remedy is not the exclusive avenue open to employees seeking redress for injuries arising out of workplace hazards.

I am troubled by the language in the dissenting opinions that workers who are intentionally chemically poisoned on-the-job should not be able to recover damages from their employers because the elimination of health risks would cost too much money, thus decreasing the profits of corporations. I submit that anyone who believes that injuries or death from gases, fumes, impure air or dust should not be eliminated because a manufacturer will suffer a competitive disadvantage is an enemy of all workers. The dissenters' position is one that I would expect to be championed by a 19th century "robber baron," not a justice of this court who is duty-bound to serve all the people of Ohio.

The minority opinions are remarkably insensitive to the particularly egregious behavior on the part of employers—fraudulently misrepresenting or concealing workplace hazards—which the state has an interest in preventing. Indeed, under the theory articulated by the dissenters, an

employer could intentionally cause an employee to suffer disability or death and, yet, remain immune from tort liability.

Recently, Ohio lawyers were chastised in the following fashion:

" * * * May I suggest that anyone attempting the noble practice of law first arm himself with the knowledge of how to read, to understand that which he reads, then read the rules and cases which pertain to his problem before he embarks upon his voyage. These few simple requirements are not too much to expect of an individual who designates himself as an attorney at law and who is ready, willing and able to accept retainers for his services. If these simple rules are followed the bogeymen and hobgoblins who seek to undermine his endeavors will all disappear and he will emerge unscathed and a better attorney." *DeHart* v. *Aetna Life Ins. Co.* (1982), 69 Ohio St. 2d 189 (Krupansky, J., dissenting opinion at page 201).

In paraphrasing the foregoing quotation, may I suggest that anyone answering the noble calling of the judiciary first arm himself or herself with the knowledge of how to read, to understand that which he or she reads, then read the cases which pertain to the problem before embarking upon the voyage. Even a superficial perusal of the current literature, cases and commentaries would demonstrate to the casual reader, unless he or she were living on Fantasy Island, that toxic fumes and chemicals in the workplace are genuine health hazards to many workers. See Kutchins, The Most Exclusive Remedy Is No Remedy At All: Workers' Compensation Coverage for Occupational Diseases, 32 Labor L. J. 212 (1981); 82 American Jurisprudence 2d, Workmen's Compensation, Section 303. See, generally, *Whirlpool Corp.* v. *Marshall* (1980), 445 U. S. 1.

The bottom line of this case is that prohibiting an employee from suing his or her employer for intentional tortious injury would allow a corporation to "cost-out" an investment decision to kill workers. This abdication of employer responsibility, as represented by the dissenters, is an affront to the dignity of every single working man and working woman in Ohio.

SWEENEY and C. BROWN, JJ., concur in the foregoing concurring opinion.

CLIFFORD F. BROWN, J., concurring. The decision in this case, reflected in the thorough analysis by Justice William B. Brown and the perspicacity displayed by Chief Justice Celebrezze in his concurring opinion, establishes that this court has not yet reached a state of institutionalized impotence. Rather, it retains vitality and an appreciation of the need for the growth of the law[15] in the field of workers' compensation.

A decision other than that we reach today would not only reject the legislative mandate of liberal construction in favor of claimants, it would be a display of judicial anemia and necrosis. All law is justice, and justice is law. It is the adoption and promotion of what is good, and the avoidance of evil. Our construction of the law complies with this definition of justice, while an opposite decision would constitute injustice.

Although the legal issue in this case is one of first impression for this court, the just result we reach merely adopts and amplifies the rule already recognized in Ohio in the well-reasoned opinion for a unanimous Sixth District Court of Appeals in *Delamotte* v. *Midland Ross* (1978), 64 Ohio App. 2d 159, and followed by the Sixth and Eighth District Courts of Appeal in *Barley* v. *Harrison Manufacturing* and *Pariseau* v. *Wedge Products, Inc.,* cited by the majority. The product of such experienced and well intentioned judicial minds of our appellate courts should not be given short shrift.

Furthermore, our decision in this case should be considered in light of the fact that for occupational diseases incurred in the work place, such as appellants' chemical poisoning, there is no workers' compensation paid unless there is total disability. R. C. 4123.68(BB) and (Y). *State, ex rel. Miller,* v. *Mead Corp.* (1979), 58 Ohio St. 2d 405.

This court has never yet ruled that an employer may intentionally harm an employee and remain immune to civil suit. Nor have we yet ruled that a fellow employee may intentionally harm another employee with such impunity.[16] The

---

[15] "[T]here can be no constancy in the law. * * * Law defines a relation not always between fixed points, but often, indeed oftenest, between points of varying position. The acts and situations to be regulated have a motion of their own. There is change whether we will it or not." Cardozo, The Paradoxes of Legal Science, page 11 (1928).

[16] That no employer or fellow employee immunity exists for intentional harm to

legislature does not abrogate or change the common law, unless its statutory language is clear and concise and not subject to any other reasonable construction. *Triff* v. *National Bronze & Aluminum Foundry* (1939), 135 Ohio St. 191, 202. Accordingly, the common law right of action against an employer or fellow employee for intentional torts remains.

I note that the decision we reach today is attacked on the basis that "goods manufactured in this state will thereby suffer a competitive disadvantage, and a less hospitable climate is created to attract and maintain industry in this state." This is a scare tactic to create an illusion that industry will leave Ohio and establish itself in other states because Ohio does not grant immunity to employers who intentionally harm their employees. This tactic and illusion assumes without foundation that other states grant such immunity to employers who intentionally maim and kill their employees. Minnesota, New York, Massachusetts and West Virginia, as we have done here, do not grant such immunity. See footnotes 8, 9 and 11. The critics of our decision have not called attention to any other state that has granted such immunity to employers. Employers bent upon chemically poisoning their employees have no place to go in the United States to perform their perfidy with impunity.

The view expressed to support employer immunity is

---

another employee is implied in our decision in *Landrum* v. *Middaugh* (1927), 117 Ohio St. 608, at page 615:

"Is the foreman, however, so merged with the employer, when acting within the scope of his employment, that the immunity of the employer from liability under the Workmens' Compensation Act also renders the foreman immune?

*"That he is not merged with the employer in performing certain acts is evident.* If the foreman willfully, maliciously, or wantonly, in pursuance of his own unlawful purpose, injures a fellow employe, his act is not the act of the employer. But his acts done in lawful furtherance of the employer's business, under express authority of the employer, are the employer's acts. It is upon this theory that the employer is liable for the acts of the foreman done pursuant to and in the course of his employment. *Qui facit per alium facit per se. The acts which the foreman does in the course of his employment, without malice, wantonness, or willful intent, he would not do unless expressly authorized and ordered by his employer to do them.* * * *" (Emphasis added.)

*Landrum* was reversed in *Gee* v. *Horvath* (1959), 169 Ohio St. 14, which permitted recovery by an employee in a suit against the foreman for his negligent act. The *Gee* decision was nullified in 1963 by the General Assembly's enactment of R. C. 4123.741 which provides that the employee is not liable for his negligence which results in injury to the fellow employee. It left undisturbed the *Landrum* statement implying that an employee is liable for his willful act injuring another employee.

generated by greed to save a few dollars at the expense of chemically poisoned employees. It displays a brutal lack of compassion. It sends a message that dollars saved is more important than workers' lives.

Our enlightened decision in this case will serve as a good example to courts in other jurisdictions to adopt rules similar to ours, recognizing that it represents a refusal to revert to the Dark Ages of jurisprudence. Progress in workers' safety, which will be promoted by our decision, is as important as jobs for progress. Such workers' safety should rank higher on our scale of human values than that rallying cry and maxim: "Profit is not a dirty word in Ohio." What is good for workers is good for Ohio.

Finally, the prediction by appellees of excessive litigation accompanying every workers' compensation claim of import if immunity of the employer for intentional harm to employees is not established is irrelevant. "Dire predictions of excessive litigation and substantial liability always accompany any important decision * * * ." *LeCrone* v. *Ohio Bell Telephone Co.* (1963), 120 Ohio App. 129, 138.

CELEBREZZE, C. J., and SWEENEY, J., concur in the foregoing concurring opinion.

LOCHER, J., concurring in part and dissenting in part. This cause arises on a motion to dismiss for lack of subject-matter jurisdiction, Civ. R. 12(B)(1), and for failure to state a claim upon which relief can be granted, Civ. R. 12(B)(6). I agree with the syllabus as an abstract proposition of law. That is, intentional torts fall outside the workers' compensation scheme, and jurisdiction for intentional torts done by employers to their employees lies in the Court of Common Pleas. Therefore, we need not concern ourselves with the hypothetical subject-matter jurisdiction question.

Rather, we should concentrate on the question of whether appellants have failed to state a claim. Civ. R. 12(B)(6). The majority correctly applies the test in *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242: " * * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." In this case, we examine appellants' complaint and

determine whether they have alleged beyond doubt an intentional tort which will permit recovery by appellants outside the workers' compensation system.

Appellants allege that appellees *knew* of the conditions that existed but failed to correct them, to warn appellants or to report these conditions to governmental authorities. Nevertheless, these allegations may not constitute intent. "[T]he mere knowledge and appreciation of a risk, short of substantial certainty, is not the equivalent of intent. The defendant who acts in the belief or consciousness that he is causing an appreciable risk of harm to another may be negligent and if the risk is great his conduct may be characterized as reckless or wanton, but it is not classed as an intentional wrong." Prosser on Torts (1971), Section 8, page 32 (footnote omitted). Appellants have not clearly alleged any degree of certainty.

The majority, however, concludes that "[n]o reasonable individual would equate intentional and unintentional conduct in terms of the degree of risk which faces an employee * * * ." I prefer the analysis of Professor Prosser. Every undertaking involves some risk. We should not circumvent the statutory framework for workers' compensation merely because a known risk existed. We should demand a virtual certainty.

For this reason, the majority is correct in remanding this case to the trial court for a factual determination as to whether appellees committed an intentional tort or whether recovery should occur exclusively under the workers' compensation system. The extent to which the members of this court disagree demonstrates that a finder of fact should resolve this case. We should make it clear to the trial court, however, that *this court makes no decision* as to whether appellants' allegations necessarily constitute an intentional tort.

Accordingly, I concur in the judgment only to the extent that the majority leaves the question of intent to the finder of fact in the trial court. I do not concur in the syllabus as a proper statement of the law of this case, however. The ultimate question, as to whether appellees' conduct was indeed an intentional tort, remains.

HOLMES, J., dissenting. In the syllabus the majority states broadly what might be considered as accurate law re-

garding the right of an employee to bring an action against his employer for the latter's commission of an intentional tort against the employee. However, the opinion then proceeds to emasculate this basic valid premise and radically depart from historic Ohio law by validating actions brought by employees against their employer for their condition, illness or disease occasioned by and arising out of their employment, and while working within the scope of their employment.

The use of the particular chemicals, found here to be utilized by the employing company, were so introduced into the manufacturing process by way of a business or commercial judgment to effect an end product of the manufacturing process and not utilized to intentionally injure these employees. These appellants, and other employees of Milacron, were employed to engage in the manufacturing process, using the necessary ingredients or products reasonably determined by the management of the employer. Injuries, occupational disease, or bodily condition received or contracted by any employee in the course of or arising out of his employment and use of the materials of manufacture must, insofar as bringing an action against an employer, be considered a hazard of employment which may be compensable under R. C. 4123.01 to 4123.94, but not actionable in a civil suit against the employer. Section 35 of Article II, Ohio Constitution; R. C. 4123.74 and 4123.741.

There has been no intentional or malicious tort alleged here which could reasonably withstand a motion to dismiss the complaint pursuant to Civ. R. 12(B)(1) and (6). The trial court was correct in granting such motion, and the Court of Appeals did not err in affirming the trial court's judgment.

I would accordingly affirm the Court of Appeals.

KRUPANSKY, J., dissenting. The majority opinion, while appearing on the surface to be a humanitarian gesture, in effect undermines the beneficent purposes for which the Ohio Workers' Compensation Act was created. I must, therefore, respectfully dissent.

In my opinion, the Ohio Constitution and the Revised Code mean precisely what they say: workers' "compensation shall be *in lieu of all other rights to compensation, or damages,*

for * * * injuries, or occupational disease, and any employer who pays the premium * * * *shall not be liable to respond in damages at common law* or by statute for such * * * injuries or occupational disease." Section 35, Article II, Ohio Constitution. (Emphasis added.) Appellants have convinced the majority that "all" does not mean "all," but instead means "all, except for rights to compensation for intentional torts."

Nowhere in the language of the Constitution or the statute is there support for the conclusion that the workers compensation system was designed to compensate employees solely for employer negligence. The majority reasons neither the Code nor the Constitution "expressly extend the grant of immunity to actions alleging intentional tortious conduct." However, neither is immunity expressly granted to actions alleging simple negligence. Does it follow, therefore, that a liberal construction of the Act calls also for an exception for simple negligence, and that we should allow double recovery for employer negligence since it was not expressly excluded under the Act? The majority claims, if intentional torts are covered under the Act then intentional torts are encouraged. If this is true, then are not negligence and industrial accidents similarly encouraged, since they are covered under the Act?

Such reasoning leads ultimately to releasing the floodgates to a whole vista of lawsuits, each claiming exceptions to the all-inclusive language of the Act. The majority opinion represents a foot in the door policy to encourage workers to sue their employers for damages in addition to compensation provided under the Act.

The intent of the General Assembly, in enacting R. C. 4123.35 was to eliminate *all damage suits* outside the Act for injury or disease arising out of employment, including suits based on intentional tort. If the General Assembly desired to create an exception for intentional misconduct it surely could have done so. R. C. 4123.54, which disallows recovery for employees whose injuries were "purposely self-inflicted," illustrates the legislature's awareness of the possibility of excepting intentional wrongdoing.

As the majority notes, workers' compensation does not provide full compensation for employees suffering from occupational diseases or injuries. The Act, however, does not dif-

ferentiate between injury or disease caused negligently and injury or disease caused intentionally. If, as the majority concludes, "there is no legitimate reason why an employer should be able to escape from" providing full compensation for intentional torts, then there is likewise no reason to allow the employer to "escape" from paying full damages for simple negligence.

The majority's myopic approach disrupts the delicate balance struck by the Act between the interests of labor, management and the public and signals the erosion of a valuable system which has served its purpose of providing a common fund for the benefit of all workers.

While R. C. 4123.95 provides for a liberal construction of the Act, it must not be used as a panacea to justify reasoning which suffers from logical malnutrition. One of the long-range effects of permitting recovery in these types of cases is the additional costs that will ultimately have to be borne by the consumer through increased product prices. Goods manufactured in this state will thereby suffer a competitive disadvantage, and a less hospitable climate is created to attract and maintain industry in this state. Since industry provides jobs, the labor force has an interest in encouraging industry. Thus, while some workers may benefit from recovery against the employer for intentional torts in addition to collecting workers' compensation benefits, we would be ill-advised to engage in such irresponsibility for the benefit of a few at the detriment of so many.

To avoid such catastrophic results, I would therefore affirm the judgments of the lower courts.

HOLMES, J., concurs in the foregoing dissenting opinion.