**TAYLOR, Admr.,**

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION**

Court of Claims of Ohio.

No. 93–03951.

Decided July 1, 1994.

62

*Spangenberg, Shibley, Lancione & Liber, John D. Liber* and *John R. Liber II;* and *Larry E. Coey,* for plaintiff.

*Betty D. Montgomery,* Attorney General, and *Sally Ann Walters,* Assistant Attorney General, for defendant.

J. WARREN BETTIS, Judge.

Plaintiff, Kevin Taylor ("plaintiff"), filed this wrongful death action in his capacity as the personal representative of the estate of his wife, Beverly Jo Taylor ("Taylor"), against defendant Ohio Department of Rehabilitation and Correction. Trial in this matter was bifurcated and proceeded on the sole issue of liability. Upon order of the court, post-trial briefs were filed and proposed findings of fact and conclusions of law were submitted by the parties.

The gravamen of plaintiff's complaint is that Taylor's death was the result of an intentional tort by defendant's employees in failing to provide adequate security in the learning center located inside the Southern Ohio Correctional Facility ("SOCF"). The court, having considered the totality of evidence and arguments of counsel, renders the following decision.

SOCF was opened in 1972 as Ohio's only maximum security prison, designed for 1,620 inmates. SOCF houses only Ohio's worst, most-violent male criminals: all death-row inmates, all felons with violent institutional behavior, and all predatory convicts. In June 1990, SOCF housed a population of 2,200 inmates.

SOCF contains within its structure a learning center, consisting of a library and school, which has been in existence since the opening of the institution in 1972. The library is located on the lower level of the learning center while the school is located on the upper level. Each level of the learning center had a separate entrance from the main corridor.

In June 1990, the school consisted of eight classrooms and three offices designed in a rectangle, with the classrooms and offices located around the perimeter. The doors to the classrooms and offices opened into a common area in the center of the school, which was referred to as the "flats." An inmate restroom was located along the entrance corridor leading to the flats. A staff restroom was located around the corner from the entrance corridor which faced the flats. The area immediately outside the staff restroom door was enclosed by a short brick wall, approximately three feet in height, with a gate opening from the hallway. The classrooms and offices all had windows facing the flats, allowing for observation into and from the rooms.

A correctional officer's desk was located in the entrance corridor across from the inmate restroom. When seated at the desk, the correctional officer could not see the staff restroom or most of the classrooms located in the school. The correctional officer's field of vision while at the desk encompassed the back of the school, which consisted of three small offices and one classroom.

In June 1990, the student population in the school ranged from approximately eighty to one hundred inmates for each session. At that time, the school's staff

consisted of four female civilian employees, seven male civilian employees and one correctional officer. The responsibilities of the correctional officer assigned to the school, as set forth in the post orders, included checking the inmate and staff restrooms and various classrooms first thing in the morning for weapons and other contraband. When the inmate students and workers arrived, the officer was required to collect their passes, inspect their books, and check each inmate with a hand-held metal detector. The correctional officer had the primary responsibility for providing security and protecting the entire school's staff.

On June 7, 1990, at approximately 9:30 a.m., Taylor, a teacher at the SOCF school, was murdered in the staff restroom by inmate Eddie Vaughn, who was her teacher's aide. Inmate Vaughn had followed Taylor to the staff restroom after the morning break and forced her into the restroom, thereby isolating them both. Neither the lone correctional officer, Kenneth Mounts, nor any other school staff members observed Vaughn's abduction of Taylor.

Once inside the restroom, Taylor managed a brief scream, which alerted Officer Mounts who was sitting at the officer's desk. At this time, Officer Mounts activated his silent alarm, sending an instant signal throughout the prison, as he ran to the restroom door. School staff members and additional correctional officers from other areas in the prison also ran to the locked restroom door in response.

Despite pleas to Vaughn not to hurt Taylor, Vaughn slashed Taylor's throat with the metal spine of a three-ring notebook binder. Vaughn had fashioned this razor-sharp weapon from a notebook, which he, as a student, was permitted to remove to his cell.

This cause of action was brought pursuant to Ohio's wrongful death statute, R.C. 2125.01. More specifically, plaintiff's claim for a right to relief sets forth an action sounding in intentional tort. Plaintiff alleges that defendant, acting by and through its employees and agents, knew with substantial certainty prior to June 7, 1990 that a female staff member was going to be harmed in the school as a result of inadequate security. Plaintiff asserts that defendant's failure to add an additional correctional officer or change the location of the officer's desk in the school prior to June 7, 1990 was substantially certain to result in harm to a female staff member.

Generally, all actions for injuries sustained during the course of employment must be brought under Ohio's Workers' Compensation Act. Defendant, as a complying employer for purposes of the Ohio Workers' Compensation Act, would ordinarily be immune from suit. However, under the common law, as enunciated in *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, an employee, or, in this case the

employee's representative, may recover damages as a result of injuries sustained from the intentional conduct of defendant as her employer. This common-law right of action established an exception to the rule of exclusivity of workers' compensation recovery for work-related injuries.

█ A cause of action brought by an employee for a common-law intentional tort requires proof that the employer either specifically intended to injure the employee or knew that injury to the employee was substantially certain to result from the employer's actions or inactions. *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046. A common-law intentional tort action must be determined according to the standards set forth in the fifth and sixth paragraphs of the syllabus to *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, as modified by the Supreme Court in paragraphs one and two of the syllabus of *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, as follows:

"1. Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition *within* its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

"2. To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty— is not intent." (Citations omitted and emphasis added.)

█ In an action such as this, the employee at all times has the burden of proving that the employer had knowledge amounting to substantial certainty that an injury would take place. *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169,

172, 539 N.E.2d 1114, 1116–1117. The determination of an intentional tort focuses on the knowledge of the employer regarding the risk of injury to an employee. *Id.* Simple notice of a dangerous situation and failure to act are insufficient to establish an intentional tort. The employee has the burden of proving by a preponderance of the evidence that the employer had actual knowledge of the exact danger which ultimately caused the injury. See *Van Fossen,* 36 Ohio St.3d at 112, 522 N.E.2d at 500–501.

■ First, in order for plaintiff to prevail, he must establish intent for the purpose of proving the existence of an intentional tort. Plaintiff must first demonstrate knowledge by defendant of the existence of a dangerous process, procedure, instrumentality or condition within its operation. Plaintiff asserts that SOCF, as a maximum security prison that houses Ohio's worst, most-violent male criminals, is an inherently dangerous place in which to work. Defendant, to the contrary, submits that SOCF is not a dangerous place to work. Specifically, Reginald Wilkinson, Director of the Ohio Department of Rehabilitation and Correction, when asked this question at trial answered, "I don't think our prisons are any less violent than working at the Ohio State University, or local urban high school, or walking down the street." Nevertheless, to say that SOCF is a dangerous place to work is an understatement. SOCF is a maximum security prison that houses the worst of the worst male criminals in the state. The prisoners housed at SOCF are all prone to commit violent acts at any time, thereby creating a dangerous environment within which to work.

Furthermore, the court finds that defendant knew that SOCF was a dangerous place within which to work for female employees due to the numerous attacks on females throughout the institution prior to June 7, 1990. More specifically, defendant knew that female employees were particularly subject to this danger in the school due to the possibility of isolation. As a result, the court finds that defendant had knowledge of the existence of a dangerous process within the operation of its school prior to June 7, 1990.

■ Second, plaintiff must prove defendant knew that if Taylor were subjected by her employment to such dangerous process, then harm to her was a substantial certainty. The principal issue before the court is whether defendant's knowledge of the particular danger to its female employees in the school rose to the level of substantial certainty. What constitutes a substantially certain result will vary from case to case based on the facts involved. *Richie v. Rogers Cartage Co.* (1993), 89 Ohio App.3d 638, 644, 626 N.E.2d 1012, 1016. Therefore, the intentional tort cause of action is limited to egregious cases. See *Sanek,* 43 Ohio St.3d at 172, 539 N.E.2d at 1116–1117.

Plaintiff must prove that defendant's actions or inactions amounted to more than negligence or recklessness. The probability that certain consequences will follow must increase beyond that necessary to establish recklessness in order for plaintiff to establish the proof of substantial certainty so that defendant is treated by law as if it had in fact desired to produce the result. *Ruby v. Ohio Dept. of Natural Resources* (Dec. 3, 1992), Franklin App. No. 92AP–947, unreported, 1992 WL 361817. Mere knowledge and appreciation of risk are not intent. *Fyffe,* 59 Ohio St.3d at 118, 570 N.E.2d at 1112.

The court finds that the following facts establish that defendant knew that harm to a female staff member was substantially certain to occur in the school prior to Taylor's murder. First, SOCF had one correctional officer posted in the school who was to provide security for the school's staff and supervise anywhere from eighty to one hundred inmates. The court finds that the responsibilities of the correctional officer in the school, as set forth in the post orders, were too great for one officer. Because the correctional officer's time and attention were devoted to searching inmates at the desk near the entrance, the rest of the school was essentially unguarded. This situation made complying with the post orders' mandate of providing maximum security and maximum supervision for staff members nearly impossible. As a result, the court finds that at least one additional correctional officer was needed in the school to facilitate maximum supervision and provide adequate security for school staff members.

Furthermore, the court finds that the isolated position of the officer's desk near the entrance of the school created a substantial security hazard due to the possibility of isolation within the school. Although the post orders for the school directed the officer to rove, whenever possible, the court finds that the correctional officer spent almost all of his time at the desk. As previously stated, the officer's desk was located far down the entrance corridor across from the inmate restroom.

The officer's field of vision while at the desk allowed direct supervision of only one classroom and three offices located at the rear of the school. While at the desk, the officer could not see into any of the classrooms, nor could he see the door to the staff restroom. As a result, the possibility of isolation between inmates and staff members created a substantial risk of harm in all other areas of the school, including the staff restroom.

The court further finds that those officers posted in the school as relief were not only aware of these problems, but expressed their concerns through the chain of command to supervisors. Additionally, several SOCF teachers complained directly to supervisors regarding security deficiencies in the school and raised the issue of additional security during school meetings. With violence rising at the prison, teachers, correctional officers and the union requested that at least one

additional correctional officer be posted at the school. However, defendant failed to respond to any requests by its employees regarding security in the school prior to June 1990.

Second, the court finds that defendant knew that the school's staff restroom posed a substantial security hazard due to the isolated position of the officer's desk. On March 24, 1988, Joyce Brady, the SOCF librarian, was abducted in the library staff restroom by two inmates wielding homemade knives. The circumstances of this abduction were nearly identical to those of Taylor's incident. The physical layout of the library and school was identical, with the only difference being the location of the correctional officer's desk. In the library, the correctional officer's desk was located at the end of the entrance corridor where it met the main area of the library. The positioning of the desk in this location allowed the officer direct supervision of the staff restroom and the entire library. Fortunately, the correctional officer witnessed the abduction and pulled Brady from the restroom before the inmates could lock the door.

Because of the Brady incident, defendant knew that security needed to be improved, both at the library and at the school. The improvements were feasible and economical. However, in response, defendant failed to make any security improvements in the school, except minor changes to the staff restroom. Although the staff restrooms in both the library and the school share identical floor plans, defendant refused to implement any productive security changes in the school.

Third, the court finds that defendant was long aware of the particular risk of harm posed to female staff members who worked within the institution, regardless of their location, due to the repeated attacks on nonsecurity female employees prior to Taylor's death. Whether a nurse, psychological assistant, a teacher or a librarian, defendant had a responsibility to protect these female employees from inmate attacks.

Prior to June 7, 1990, defendant recognized this responsibility for the safety of its female employees by giving these employees special consideration while in the institution. Primarily, at the time of Taylor's murder in 1990, female employees were to be escorted by a male employee when walking through most of the prison. This procedure illustrates defendant's knowledge that female employees were particularly subjected to a risk of harm while working in Ohio's only maximum security prison. However, this concern was not extended to those female employees working within the school once inside the school.

As a result of the Brady incident, and the numerous other attacks on female employees prior to Taylor's murder, the court finds that defendant not only knew that female staff members were targeted for attacks, but also that the staff restroom posed a particular danger as an isolated area in which to carry out

these attacks. The court further finds that defendant's failure to react to these concerns was an informed decision to allow injury, which was substantially certain to occur, to be waged on female employees.

Fourth, the court finds that defendant had specific forewarning of an impending security problem in the SOCF school. On June 1, 1990, David Colley, the school administrator, was forced to counsel inmate Vaughn regarding the development of his unhealthy attitude towards Taylor. Taylor and other school staff members informed Colley that inmate Vaughn displayed obsessive behavior towards Taylor, but Colley simply orally reprimanded inmate Vaughn and permitted him to continue his work assignment as Taylor's aide. Six days later, inmate Vaughn murdered Taylor in the school's staff restroom.

In sum, the court finds that defendant was aware of the substantial risk of harm to female employees in the school and the security hazard posed by the school's staff restroom. Despite the repeated incidents of violence, warnings from teachers and correctional officers, and obvious inadequacies of the security arrangements in the school, defendant exhibited a deliberate indifference to the safety of its female employees in the school. The court finds that the aforementioned facts were particularly egregious and established that defendant knew, with substantial certainty, prior to June 7, 1990, that a female staff member was going to be harmed in the school.

Finally, plaintiff must prove by a preponderance of the evidence that defendant, under these circumstances, and with such knowledge, did act to require Taylor to continue to perform the dangerous task. The third and final portion of the intentional tort test is recognized when an employee is subjected to a dangerous condition while performing his or her normal duties and the employer has taken no steps to prevent the employee from being exposed to the dangerous condition. *Howard v. Columbus Prod. Co.* (1992), 82 Ohio App.3d 129, 135–136, 611 N.E.2d 480, 483–485. The court finds that defendant, despite the knowledge of injury-causing danger, took no steps to prevent Taylor's murder from happening, thereby fulfilling the intentional tort burden.

In conclusion, the court finds that defendant knew with substantial certainty prior to June 7, 1990 that a female staff member was going to be harmed in the school. Defendant knew with substantial certainty that it was only a matter of time before someone got hurt, yet refused to rectify the security at the learning center. Defendant's conduct is tantamount to a deliberate indifference to the safety and security of its employees. Not only is defendant at fault, but the legislature must accept its share of the blame for failing to adequately fund the staffing of security guards at SOCF. It is this court's opinion, based upon the evidence, that the staff and correctional officers at SOCF wanted to do a good job

of security, but were prevented from doing so by the failure to add additional security personnel.

Great concern has been directed to the furnishing of social services at SOCF. That's all well and good, but it should not be at the expense of security. Security should be the number one concern of the legislature, the defendant, and all others interested in protecting the lives of the individuals who work in that institution, as well as the inmates themselves. Accordingly, judgment is hereby rendered in favor of plaintiff.

### Judgment Entry

This action has been duly tried before the court solely on the liability issue. Upon consideration of all the evidence and for the reasons set forth in the decision rendered concurrently herewith, it is ORDERED that judgment is rendered for plaintiff and against defendant. The assignment commissioner is hereby directed to set this cause for trial to determine the damage issue.

*Judgment accordingly.*