OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants, Larry and Roseanne Holstein, appeal the decision of the Belmont County Court of Common Pleas that granted summary judgment to Defendant-Appellee, The Ohio Valley Coal Company, on the Holsteins' claim for an employer intentional tort. In order to survive summary judgment in a claim for an employer intentional tort, the Holsteins must demonstrate, among other things, that there is a genuine issue of material fact regarding whether Ohio Valley Coal was substantially certain that Larry would be injured when the slope belt was being pulled. However, the Holsteins have failed to prove how the pull caused the counterweight to fall. Without such evidence, they cannot demonstrate a genuine issue of material fact on this question. Accordingly, the trial court properly granted summary judgment to Ohio Valley Coal and its decision is affirmed.
 Facts {¶ 2} Ohio Valley Coal operates a coal mine in Belmont County, Ohio. Larry Holstein was employed by Ohio Valley Coal as a fire boss and belt walker, which are management positions. A fire boss would certify that there were no hazardous conditions in the mine, while a belt walker's job was to inspect the belt for flaws. Holstein was injured on the job in an automobile accident on August 5, 2001, and missed almost a month of work as a result. His first day back from work after the injury was August 31, 2001. He reported for the afternoon shift, which began at 4:00 p.m.
 {¶ 3} The coal mine contains a series of belts used to transport the coal from the mine to the surface. The last and largest of these belts is called the slope belt. It exits the mine and raises the coal to a tower. During the morning of August 31, 2001, a mine employee noticed that the belt was beginning to come apart. Ohio Valley Coal contacted a subcontractor to fix the slope belt, but it tore into two before the subcontractor was able to repair it. Once the slope belt broke, all production at the mine ceased until it was fixed. *Page 2 
 {¶ 4} Repairing the slope belt is a multi-step process. First, the counterweight keeping the belt tight had to be raised. Second, a wire rope needed to be threaded through the pulleys and rollers in which the slope belt normally traveled and attached to the slope belt by a pull board. Finally, a bulldozer used the wire rope to pull the slope belt back through the rollers, so the belt could be reattached to itself.
 {¶ 5} Ohio Valley Coal's slope belt had only come apart one previous time, on December 31, 2000. On that day, Ohio Valley Coal used chains to raise the counterweight. This was a time-intensive process and Ohio Valley Coal contacted an engineering firm to engineer a faster way of accomplishing this task. The result was to raise the counterweight with a wire rope attached to a bulldozer, similar to the way the slope belt was pulled together. When the slope belt broke on August 31st, Ohio Valley Coal used this new procedure to raise the counterweight. It then left the wire rope used to raise the counterweight attached to the counterweight, since it would be used again to lower the counterweight once the slope belt was repaired.
 {¶ 6} When Ohio Valley Coal fixed the slope belt in December 2000, the ¾" wire rope they were using to pull the slope belt broke. Ohio Valley Coal then used a 1" wire rope, which successfully withstood the load. Ohio Valley Coal knew the danger a wire rope of this size posed to its employees if it suddenly moved due to excessive force, such as when a wire rope breaks.
 {¶ 7} Larry arrived for his shift on August 31st after the slope belt had broken. Upon arriving at work, he discovered the problem and traveled to the slope belt to see if he could assist in the repair. At the site of the repair, he mostly just observed what was going on. All of Ohio Valley Coal's employees maintained a safe distance from the wire rope used to pull the slope board. At one point, Larry was asked to watch the wire rope to make sure it did not slip from the bulldozer. While doing this, Larry was standing near the wire rope which had been used to raise the counterweight, which was lying loose on the ground but was still attached to the counterweight.
 {¶ 8} During the attempt to pull the slope board back through the pulleys, the counterweight moved every time the bulldozer pulled the slope belt. Eventually, the 1" wire rope being used to pull the slope belt broke. As a result, the counterweight *Page 3 
somehow broke from its slings and crashed to the ground. The wire rope attached to it was set quickly into motion, bounced off a metal post, and struck Larry, severing his leg below the knee and throwing it thirty feet from where Larry had been standing. It was later determined that the wire rope broke due to overloading and federal authorities required that Ohio Valley Coal first unload the coal off the slope belt before attempting to repair a broken slope belt in the future.
 {¶ 9} The Holsteins filed a complaint on August 6, 2003 against Ohio Valley Coal, Ohio Valley Vulcanizing, the subcontractor who assisted in the repair, and Wire Rope Corporation of America, Inc., who manufactured the wire rope which failed. The claim against Ohio Valley Coal was for an employer intentional tort. Eventually, each of the defendants moved for summary judgment and the Holsteins voluntarily dismissed both Ohio Valley Vulcanizing and Wire Rope. On July 21, 2006, the trial court granted Ohio Valley Coal's motion for summary judgment.
 Standard of Review {¶ 10} When reviewing a trial court's decision to grant summary judgment, we apply the same standard as the trial court and, therefore, engage in a de novo review. Parenti v. Goodyear Tire Rubber Co.
(1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v.Shaffer, 90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 11} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. "In order to overcome an employer-defendant's motion for summary judgment on an intentional tort claim, the plaintiff must set forth specific facts showing there is a *Page 4 
genuine issue as to whether the employer committed an intentional tort."Burgos v. Areway, Inc. (1996), 114 Ohio App.3d 380, 383.
 Substantial Certainty {¶ 12} In their first of three assignments of error, the Holsteins argue:
 {¶ 13} "The court erred in holding that there was no issue as to whether the employer had knowledge that an injury to one of its employees was substantially certain to occur."
 {¶ 14} In this assignment of error, the Holsteins argue that the trial court improperly granted summary judgment on their employer intentional tort claim because there is a genuine issue regarding whether Ohio Valley Coal knew with substantial certainty that an employee would be injured when the slope belt was being repaired. In order to recover against an employer for an intentional tort, an employee must prove the three elements the Ohio Supreme Court described in Fyffe v. Jeno's,Inc. (1991), 59 Ohio St.3d 115.
 {¶ 15} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
 {¶ 16} The primary concern in any case where an employee is claiming his employer committed an intentional tort against him is whether the employer, "through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibson v. Drainage Products,Inc., 95 Ohio St.3d 171, 766 N.E.2d 982, 2002-Ohio-2008, ¶ 27. "[I]f the injured employee fails to present sufficient evidence to support any one of the three requirements, summary *Page 5 
judgment in favor of the employer is appropriate." Hunter v. Interpak,Inc., 11th Dist. No. 2001-L-198, 2002-Ohio-7149, ¶ 14.
 {¶ 17} The Holsteins' first assignment of error focuses on the second of these prongs. The second prong of the Fyffe test requires that the plaintiff demonstrate that the employer was substantially certain that an employee would be injured if exposed to the dangerous condition. As both this and other courts have stated, "[t]his is a difficult standard to meet." McGee v. Goodyear Atomic Corp. (1995), 103 Ohio App.3d 236,246; Crnarich v. United Foundries, 7th Dist. No. 02 CA 128, 2003-Ohio-4458, ¶ 21; Hunter at ¶ 19.
 {¶ 18} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe at paragraph two of the syllabus.
 {¶ 19} The Ohio Supreme Court described this concept differently inVan Fossen.
 {¶ 20} "There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore an exception, under Blankenship [v. Cincinnati Milacron Chemicals,Inc. (1982), 69 Ohio St.2d 608, 433 N.E.2d 572,] or Jones [v. VIPDevelopment Co. *Page 6 
(1984), 15 Ohio St.3d 90], to the exclusivity of the [Workers' Compensation] Act." Id. at 117.
 {¶ 21} Under the Fyffe test, if a dangerous condition is substantially certain to injure an employee, intent is inferred. Goodin v. ColumbiaGas of Ohio, Inc. (2000), 141 Ohio App.3d 207, 218, citing Harasyn v.Normandy Metals, Inc. (1990), 49 Ohio St.3d 175. "Thus, the employee need not illustrate that the employer subjectively intended to `accomplish the consequences.'" Id. "What constitutes a `substantially certain' result will vary from case to case based on the facts involved." Richie v. Rogers Cartage Co. (1993), 89 Ohio App.3d 638, 644.
 {¶ 22} In this case, the Holsteins must demonstrate that Ohio Valley Coal knew with substantial certainty that Larry would be injured by the wire rope attached to the counterweight when the wire rope pulling the slope belt broke. Both at the trial court and on appeal, they have almost exclusively focused on demonstrating that Ohio Valley Coal knew with substantial certainty that the wire rope pulling the slope belt would break due to overloading. However, there is a distinct lack of evidence which tends to show that Ohio Valley Coal knew with substantial certainty that a failure in the wire rope pulling the slope belt would cause the counterweight to fall, thereby setting the wire rope attached to that counterweight into motion.
 {¶ 23} In this case, the Holsteins presented affidavits from two different expert witnesses in response to Ohio Valley Coal's motion for summary judgment. The first expert, James Briem, gave no conclusion addressing the likelihood that the counterweight would fall and injure Larry during the pull operation. The second expert, Trigg Combs, stated that "[t]he failure of the counterweight restraining ropes was predictable, since it bobbed up and down each time the belt was clamped and the rope fastened. This happened each time the pull rope was shortened at the dozer, and when the dozers were changed. This bobbing could not have gone unnoticed, since the counterweight with its support structure are apparent to all, being in the center of the arena."
 {¶ 24} Neither of these experts gave any evidence which tends to show that it was substantially certain that the counterweight would fall if the wire rope pulling the *Page 7 
slope belt failed. Briem, of course, gave no opinion on the matter. Combs called the counterweight's fall "predictable," but just because something is predictable does not mean that it is substantially certain to occur. Furthermore, Combs' opinion does not try to describe how the counterweight's restraints failed. No reasonable fact-finder could conclude that Larry's injury was a substantial certainty without some sort of explanation of exactly how pulling the slope belt caused the counterweight to fall and thus the cable to snap and fly about.
 {¶ 25} Ohio Valley Coal's safety director, Richard Homko, did explain what he believed caused the counterweight to fall. According to Homko, the pull raised the counterweight out of the slings designed to hold it into place. When the pull rope broke, the counterweight dropped, and the force of the dropping counterweight broke through the slings.
 {¶ 26} This testimony might provide the explanation for the failure and allow a fact-finder to judge whether Ohio Valley Coal knew, with substantial certainty, that the counterweight would fall. However, Homko's testimony is not based on his own personal knowledge and he is not an expert in this area. Accordingly, he is not qualified to render an opinion explaining how the counterweight fell.
 {¶ 27} Similarly, a person who was on site, Greg Snider, said that the pull "apparently lifted that counterweight almost to the top." However, a review of the record shows that this is mere speculation on Snider's behalf, rather than a fact within his personal knowledge.
 {¶ 28} In short, there is no proper evidence in the record showing exactly what caused the counterweight to fall. The Holsteins, as the nonmovant, were under an obligation to demonstrate by more than just mere speculation that the failure of the wire rope pulling the slope board was going to cause the counterweight to fall. Without this evidence, it is impossible to judge even whether Larry's injury was a substantial certainty, let alone whether Ohio Valley Coal knew that his injury was a substantial certainty. The Holsteins have not satisfied their burden. Accordingly, the trial court properly concluded that there was not a genuine issue of material fact with regard to whether the harm to Larry was a substantial certainty. The Holsteins' first *Page 8 
assignment of error is meritless.
 The Holsteins' Remaining Assignments of Error {¶ 29} In their other two assignments of error, the Holsteins argue:
 {¶ 30} "The court erred in holding that there was no issue of fact as to whether Appellant was required to encounter the dangerous process."
 {¶ 31} "The trial court erred by engaging in a weighing of the evidence in concluding that the manner in which Appellant sustained injury was not foreseeable."
 {¶ 32} Each of these assignments of error forms a separate basis from their first assignment of error for challenging the trial court's decision granting summary judgment to Ohio Valley Coal. However, we must affirm the trial court's decision if there is any reason to do so.State ex rel. Carter v. Schotten, 70 Ohio St.3d 89, 92, 1994-Ohio-0037. Since our resolution of the Holsteins' first assignment of error is sufficient to affirm the trial court's judgment, these other assignments of error are rendered moot.
 Ohio Valley Coal's Conditional Assignment of Error {¶ 33} Ohio Valley Coal raises the following conditional assignment of error in support of the trial court's judgment:
 {¶ 34} "Whether the trial court should have concluded that Ohio Valley Coal lacked actual knowledge of the specific danger which caused Holstein's injury under the first element of the Fyffe test, because the trial court reached this very conclusion as it concerned the lack of substantial certainty of injury under the second element of theFyffe test."
 {¶ 35} In a civil suit, a party has no standing to cross appeal a final judgment on the merits in its favor but may advance an assignment of error as appellee to prevent reversal of the final judgment that was in its favor. Seringetti Constr. Co. v. Cincinnati (1988),51 Ohio App.3d 1; R.C. 2505.22; App.R. 3(C). These rules allow an appellee who has not filed a notice of appeal from a trial court's decision to assign error to the trial court's actions. Duracote Corp. v. Goodyear Tire Rubber Co. (1983), 2 Ohio St.3d 160; Parton v. Weilnau (1959), 169 Ohio St. 145. Significantly, however, these errors may be used by the appellee as a shield to protect the judgment of the lower *Page 9 
court but may not be used by the appellee as a sword to destroy or modify that judgment. Id. In other words, such assignments of error may be used only for the limited purpose of preventing the reversal of the judgment under review. Chapman v. Ohio State Dental Bd. (1986),33 Ohio App.3d 324.
 {¶ 36} Since we have found the trial court properly granted summary judgment to Ohio Valley Coal, there is no need to address Ohio Valley Coal's conditional assignment of error.
 {¶ 37} In conclusion, Holsteins must demonstrate, among other things, that there is a genuine issue of material fact regarding whether Ohio Valley Coal was substantially certain that Larry would be injured when the slope belt was being pulled in order to survive summary judgment in this case. However, the Holsteins failed to prove how the pull caused the counterweight to fall. Without such evidence, they cannot demonstrate a genuine issue of material fact on this question.
 {¶ 38} Accordingly, the judgment of the trial court granting summary judgment to Ohio Valley Coal is affirmed.
Donofrio, J., concurs.
 Waite, J., concurs. *Page 1