LONG et al., Appellants,

v.

KELLEY & CARPENTER ROOFING & SHEET METAL, INC., Appellee.

[Cite as *Long v. Kelley & Carpenter Roofing & Sheet Metal, Inc.* (1995), 107 Ohio App.3d 26.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

No. CA95–05–095.

Decided Oct. 23, 1995.

*Becker, Reed, Tilton & Hastings* and *Richard G. Ellison,* for appellants.

*Droder & Miller Co., L.P.A.,* and *Bradley A. Powell,* for appellee.

KOEHLER, Judge.

Plaintiffs-appellants, Phillip T. Long and Pamela Long, appeal a Butler County Court of Common Pleas decision granting summary judgment in favor of defendant-appellant, Kelley & Carpenter Roofing & Sheet Metal, Inc. ("K & C"), in appellants' intentional tort case. For the following reasons, we affirm.

Appellant Phillip Long ("Long") began employment with K & C in 1978 and became a journeyman roofer approximately four years later. Although the majority of Long's roofing experience was in flat roofs, he did work on several pitched roof jobs over the years. On March 23, 1993, Long was sent out with a crew to work a pitched roof job at Wildwood Elementary School in Middletown. The crew was to install felt over the 5/12 pitch, thirteen-and-one-half-foot-high plywood roof, in preparation for shingling.

It was cloudy and misting when Long arrived at the job site. The crew put a ladder up to the roof and Long began taking rolls of felt up to the peak. After Long had carried up approximately five rolls of felt, he slipped, slid down the roof and fell off, sustaining injuries. Appellants subsequently filed an intentional tort action against K & C. The trial court granted K & C's motion for summary judgment, finding that appellants failed to establish that K & C knew or should have known that harm to Long was a substantial certainty. Appellants' sole assignment of error is as follows:

"The trial court erred to the prejudice of plaintiffs-appellants in granting defendant-appellee's motion for summary judgment."

Appellants argue that it was contrary to law for the trial court to grant summary judgment to K & C when K & C's foreman, Elmer Smith, had been instructed by the company safety director to take fall hazard equipment to the job site and failed to do so, resulting in injury to Long. Appellants note that based upon the slope and height of the roof, the presence of sawdust, and the fact that the plywood was wet and Long's boots were muddy, appellants' expert concluded that Smith must have known that Long would be injured that day.

Civ.R. 56(C) provides that summary judgment may be granted where there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and, where viewing the evidence in favor of the nonmoving party, reasonable minds could come to but one conclusion which is adverse to that party. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 117, 522 N.E.2d 489, 504–505. We will therefore review the facts presented on summary judgment in this case to determine if appellants have established a genuine issue as to whether K & C committed an intentional tort.

To establish intent for the purpose of proving an employer's intentional tort, it must be demonstrated that (1) the employer had knowledge of the existence of a dangerous process, procedure, instrumentality or condition within the business operation; (2) the employer had knowledge that if the employee was subjected to the dangerous process, procedure, instrumentality or condition, that harm to the employee would be a substantial certainty; and (3) the employer, with such knowledge, required the employee to continue to perform the dangerous task. *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus. Proof beyond that required to prove negligence or recklessness is necessary to establish an employer's intentional tort. *Id.* at paragraph two of the syllabus. Mere knowledge and appreciation of a risk, short of substantial certainty, is not intent. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 191, 532 N.E.2d 753, 754–755.

An examination of the evidence in this case shows that the Ohio Administrative Code requires fall hazard equipment on roofs with a 4/12 or greater pitch which are also sixteen feet or higher above ground.[1] The roof at the Wildwood job was a 5/12 pitch, but was only thirteen and one half feet high. K & C vice-president Gary Carpenter told Smith to take roofing jacks and boards along to the Wildwood job, "even though they weren't needed on the job." Carpenter felt

---

1. Long previously filed a claim for VSSR (violation of a specific safety requirement) with the Ohio Industrial Commission, alleging that K & C violated Ohio Adm.Code 4121:1–3–09(E)(1), (2) and (F)(1). In denying Long's application for an additional award, the Ohio Industrial Commission found in part as follows:

    "4121:1–3–09(E)(1) and (2) provides [*sic*] direction for the construction and fastening of roofing brackets to a roof. * * * These sections are devoid of any height restrictions or other direction * * *. Therefore the sections are advisory only. * * *

    "4121:1–3–09(F)(1) * * * [provides that] * * * [o]n pitched roofs with a rise of four inches in twelve or greater, sixteen feet or more above ground * * * catch platforms shall be installed.

    "It is undisputed that the roof claimant fell from was a five inch in twelve pitch roof. * * * [T]he Hearing Officer finds that the requirement of 'sixteen feet or more above the ground' refers to the straight line distance one might fall from the edge of the roof * * *. In this case the distance from roof edge to the ground was thirteen and one half feet. Therefore this section by its terms cannot apply to the claimant's situation."

that "anytime you can make a job safer * * * than what it needs to be, employees feel more comfortable, you get more production." Carpenter indicated, however, that "it would have been up to the * * * whole crew to decide if they needed the safety equipment or not."

Carpenter and Smith both indicated in their depositions that the safety equipment was loaded on the truck the night before and the felt was loaded in the morning. Long testified by deposition that when he looked down at the truck from the top of the ladder, he saw only a pallet of felt rolls. He stated that "there definitely wasn't any safety equipment there." The other members of the roofing crew indicated in their depositions that although they didn't see the jacks and boards on the truck, they could not say whether or not the equipment was under the felt.

Ultimately, whether the equipment was on the truck is not a material issue. State regulations did not require its presence, and no one in the Wildwood crew asked that fall hazard equipment be used. Long was the only member of the roofing crew on the roof prior to the accident and never voiced concern about the safety of the job. Every journeyman roofer, foreman, and K & C executive who testified by deposition, other than Long and appellants' expert witness, testified that generally fall hazard equipment is not necessary on a 5/12 pitch, thirteen-and-one-half-foot-high roof. They considered a steep roof requiring fall hazard equipment as a rule to be one with a 7/12 or greater pitch.

The evidence also indicates that the general contractor had swept the plywood roof prior to the arrival of the roofing crew. Long testified that he cleaned the mud off his shoes on the ladder rails before going up, "like I've done a thousand times." There was also testimony that sheeting grade plywood has a rough textured surface and that dampness would not be a great concern. Finally, the evidence showed that K & C has never experienced a similar accident.

Appellants' expert witness, Lanny Stoinoff, referred in his deposition testimony to Occupational Safety and Health Administration requirements that fall hazard equipment be used at a height lower than sixteen feet on a 5/12 pitch roof. However, there is no evidence that such a regulation was in effect at the time of the accident. Stoinoff also testified that if he had been running the Wildwood job, he would have made sure that fall hazard equipment was used on a wet day.

Weighing the evidence and inferences favorable to appellants in this case, we find that reasonable minds could not conclude that K & C intentionally proceeded without fall hazard equipment at the Wildwood roofing job despite a known threat of harm to Long which was substantially certain to occur. See *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 139, 522 N.E.2d 477, 481. Although Long may have felt that it was unsafe for him to be up on the Wildwood roof, he did not communicate this concern to anyone nor did he request that fall

hazard equipment be used. The consensus of the experienced roofers involved was that fall hazard equipment is not necessary on a 5/12 pitch roof lower than sixteen feet. State regulations in effect at the time did not require that the equipment be used. K & C has no history of accidents involving falls from this type of roof or from any roof.

An intentional tort "embraces only those injuries which are 'substantially certain' to occur." *Colliver v. Armco Steel* (Aug. 3, 1992), Butler App. No. CA91–11–182, unreported, at 4, 1992 WL 185689. Such is not the case on these facts. The trial court therefore properly granted K & C's motion for summary judgment.

*Judgment affirmed.*

WILLIAM W. YOUNG, P.J., and POWELL, J., concur.