OPINION
Plaintiff-appellant, Wanda Brewster, appeals a Butler County Court of Common Pleas judgment entry granting summary judgment in favor of defendant-appellee, Prestige Packaging, Incorporated ("Prestige"), in an intentional tort case. The decision of the trial court is affirmed.
Appellant had been working for Prestige for about one year and four months when she was injured at work. At the time of the accident, appellant was a first-line supervisor. Appellant's line packaged various products. Her duties included maintaining a stock of materials, checking the quality of the product, and assisting her crewmembers as necessary.
On the day of the accident, appellant's line was packaging light bulbs. This particular job had been running without any mechanical problems. According to appellant, the assembly line set-up had been basically the same ever since she began working at Prestige. A rubber conveyor belt intersected with "high-speed" rollers to make a T-formation. Once a product was packaged, it would travel to the end of the rubber conveyor belt, fall onto the high-speed rollers, and be delivered to the shipping department. The power switch for the rubber conveyor belt was located underneath that belt so as to prevent it from being hit by fork trucks. This power switch was very close to the intersection with the high-speed rollers.
Appellant always turned off the rubber conveyor belt or designated someone else to do so at the end of each shift. On the day of the accident, appellant asked a crewmember to turn off the rubber conveyor belt. When the crewmember ignored appellant and left the work-area, appellant decided to turn off the rubber conveyor belt. As she bent over the rubber conveyor belt, her ponytail fell to the side and her hair was caught in the high-speed rollers. As a result, appellant's hair and a part of her scalp were pulled from her head. Subsequently, appellant sued Prestige for intentional tort.
At the time of the accident, appellant's hair length was halfway down her back. She was wearing her hair in a ponytail but was not wearing a hat. In her deposition, appellant testified that there were no safety rules regarding how employees were to wear their hair, and that she wore her hair in a ponytail because the plant was hot.
In his deposition, Prestige's president, David Lotterer, testified that the plant had a safety rule requiring employees with long hair to wear caps around the machinery. According to Lotterer, these rules were displayed in the employee area and should have been provided to all employees as part of their training.
There was no emergency stop switch for the high-speed rollers near the intersection with the rubber conveyor belt. The closest power switch was located at the shipping department, which was at least forty feet from the site of the accident.
After the accident, the Industrial Commission of Ohio ruled that Prestige had committed a violation of a specific safety rule "VSSR"). A hearing officer found a violation of OAC 4121:1-5-05(C)(2), which requires an employer to provide a means to disengage the power supply at any point of contact on a conveyor.[1] The hearing officer concluded that this rule violation caused appellant's injury.
Prestige filed a motion for summary judgment with the trial court, arguing that appellant had failed to demonstrate the essential elements of intentional tort. After reviewing the evidence before it, the trial court granted summary judgment in favor of Prestige. Appellant appeals, raising one assignment of error:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT.
In her assignment of error, appellant asserts that the trial court erred by granting summary judgment to Prestige. Appellant contends that she put forth evidence to support each of the three elements of intent required for an intentional tort claim. Appellant further claims that factual discrepancies between her depositional testimony and the testimony of the president of Prestige warrant reversal of the summary judgment award.
Pursuant to Civ.R. 56(C), a summary judgment is appropriate when (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. WillisDay Warehousing Co. (1978), 54 Ohio St.2d 64, 66. This court reviews a trial court's decision to grant summary judgment de novo. Jones v. ShellyCo. (1995), 106 Ohio App.3d 440, 445. Therefore, we will review the facts presented to determine whether appellant has established a genuine issue as to whether Prestige has committed an intentional tort.
In our workers' compensation system, employers are shielded from suits for negligence in exchange for their participation and cooperation with the Workers' Compensation Act. Blankenship v. Cincinnati MilacronChemicals (1982), 69 Ohio St.2d 608, 614. "The Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." Id.
Although workers' compensation provides employees with the primary means of compensation for injury suffered in the scope of employment, an employee may institute a tort action against her employer when the employer's conduct constitutes an intentional tort. Id. In this context, an intentional tort has been defined as "an act committed with the intent to injure another, or committed with the belief that such injury was substantially certain to occur." Hannah v. Dayton Power Light (1998), 82 Ohio St.3d 482, 484, quoting Jones v. VIP Dev. Co.
(1984), 15 Ohio St.3d 90, paragraph one of the syllabus.
To establish intent for the purpose of proving an employer's intentional tort, the employee must show the following:
 (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.
Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus. The proof required to demonstrate an intentional tort is beyond that which is required to prove negligence or recklessness. Hannah,82 Ohio St.3d at 484, citing Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100, paragraph six of the syllabus. As with most tort cases addressing the issue of intent, we will proceed on a case-by-case basis and consider the totality of the circumstances. See Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172, citing Kunkler v. Goodyear Tire Rubber Co. (1988), 36 Ohio St.3d 135.
The trial court found that summary judgment was appropriate because appellant had failed to show that Prestige had knowledge that an accident such as the one she experienced was substantially certain to occur and therefore had not satisfied the second prong of the Fyffe test. We agree.
This court has found that an intentional tort "embraces only those injuries which are `substantially certain' to occur." Long v. Kelley Carpenter Roofing (1995), 107 Ohio App.3d 26, 30, quoting Colliver v.Armco Steel (Aug. 3, 1992), Butler App. No. CA91-11-182, unreported, at 4.
The lack of a prior accident is evidence tending to show that an employer did not have knowledge that an injury was substantially certain to occur. E.g., Taulbee v. Adience, Inc. (1997), 120 Ohio App.3d 11, 20;Blanton v. Internatl. Minerals Chem. Corp. (1997), 125 Ohio App.3d 22;Cook v. Cleveland Elec. Illum. Co. (1995), 102 Ohio App.3d 417; Foust v.Magnum Restaurants, Inc. (1994), 97 Ohio App.3d 451. Prestige's OSHA logs do not contain evidence of any other hair injury or injury involving the conveyors. However, this does not end our analysis. It has been previously stated that:
 Simply because people are not injured, maimed or killed every time they encounter a device or procedure is not solely determinative of the question of whether that procedure or device is dangerous and unsafe. If we were to accept the appellee's reasoning, it would be tantamount to giving every employer one free injury for every decision, procedure or device it decided to use, regardless of the knowledge or substantial certainty of the danger that the employer's decision entailed. This is not the purpose of Fyffe.
Taulbee at 20, citing Cook at 429-430.
Appellant argues that the fact that a VSSR was found against Prestige demonstrates the intent necessary for an intentional tort. The supreme court has previously noted, "VSSRs often arise from mere employer negligence, thus precluding intentional tort recovery." State ex rel.Winseler Excavating Co. v. Indus. Comm. (1992), 63 Ohio St.3d 290, 293.
To demonstrate that an employer was aware that injury was substantially certain to occur, employees may present expert testimony. See Walton v.Springwood Products, Inc. (1995), 105 Ohio App.3d 400, 405 (finding that the second prong of the Fyffe test was met, in part, by expert testimony indicating that the failure to incorporate a guard required by OSHA standards created a dangerous condition); Miltenberger v. Exco (Nov. 23, 1998), Butler App. No. CA98-04-087, unreported (summary judgment reversed where employee's evidence included an expert opinion stating that if mandatory OSHA regulations and safety test were not followed, then injury would occur with substantial certainty); Izor v. James L. Gross LumberCo. (Mar. 9, 1998), Warren App. No. CA97-07-076, unreported (summary judgment reversed where employee's evidence included an affidavit of a safety and engineering consultant indicating that the failure of employer to have a guard provided by the manufacturer was unreasonably dangerous and the injuries that appellant suffered were substantially certain to occur). Appellant did not provide any such testimony for the court to consider in this case.
Instead, there was testimony tending to show that this accident was unexpected. Prestige not only offered evidence to show the absence of any prior accident or rule violation involving the conveyors, but also offered evidence that the design of the conveyors reduced the likelihood of accidents. According to Lotterer's deposition testimony, the high-speed rollers are designed in such a way that if a person places her hand on top of the rollers or if something is caught in the rollers, they will normally stop under very low pressure. Lotterer further explained that if an item became entangled in the rubber conveyor belt, the belt was designed so that it would normally stop. Appellant did not offer any evidence to refute Lotterer's description of how these conveyors functioned. Lotterer further testified that in this case, appellant's "hair got caught in the line shaft itself, which means it had to go past the steel rollers, past the rubber band, past the spindles and get into the line shaft itself."
Lotterer also testified that to his knowledge the power switch for the rubber conveyor belt had always been located in its present position and that it was in this position when Prestige bought the belt from another company ten years ago. There was no evidence that any guards on the conveyor system had been removed. There had been no complaints to management regarding the safety of the equipment.
Appellant insists that summary judgment is not proper because a review of the deposition testimony demonstrates a genuine factual dispute as to whether Prestige had a safety rule requiring employees with long hair to wear caps. At the same time, appellant argues that the fact that Prestige had a safety rule in place shows that Prestige appreciated the risk that an injury like the one in this case might occur in the absence of certain safety precautions. However, even if we assume that Prestige had a safety rule requiring employees with long hair to wear caps, this does not show that Prestige was aware that appellant's injury was substantially certain to happen. As the supreme court has explained, "[t]o establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. * * * [T]he mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe,59 Ohio St.3d at 118.
Weighing the evidence and inferences in the light most favorable to appellant in this case, we find that reasonable minds could not conclude that Prestige knew that the harm that befell appellant was substantially certain to occur. Therefore, appellant has not met the requirements of the second prong of Fyffe, which is needed to demonstrate intent in an intentional tort case. Our independent review of this case confirms that the trial court's decision to grant summary judgment to Prestige was appropriate. The assignment of error is overruled.
POWELL, P.J., and WALSH, J., concur.
[1] The hearing officer also found that Prestige had violated OAC4121:1-5-05(C)(4), which requires a means to disengage a conveyor from its power source at all "pinch points." However, Prestige was not charged with an additional VSSR because this violation was based on the same set of facts as the OAC 4121:1-5-05-(C)(2) violation.