## Stillo v. Rubbermaid
*[Cite as 2 AOA 415]*

Case No. 56612
*Cuyahoga County, (8th)*
*Decided April 5, 1990*

R.C. 4121.80
R.C. 4123.74

John T. Corrigan, Esq. Cuyahoga County Prosecutor, James Jenkins, Esq. Assistant County Prosecutor, Justice Center, 1200 Ontario Street Cleveland, OH 44113, For Plaintiff-Appellee.

William P. Robulsky, Esq., 1612 E. Prospect Road, Ashtabula, OH 44004, For Defendant-Appellant.

DYKE, J.

Plaintiffs-appellants, the estate of Grace I. Berry and Carol Stillo, alleged that defendant acted intentionally in causing their respective resulting illnesses and, in the case of Grace I. Berry, death.

Defendant-appellee Rubbermaid, Inc., filed a motion for summary judgment arguing that no material issues of fact exist in regard to plaintiffs' ability to meet the requisites for establishing an employer intentional tort as set forth in Van Fossen v. Babcock & Wilcox Co. (1988), 36 Ohio St. 3d 100.

Plaintiffs opposed defendant's motion for summary judgmet. On October 3, 1988, the trial court, without written opinion, granted summary judgment in favor of defendant. Plaintiffs filed a timely appeal of the trial court's ruling.

Plaintiffs Carol Stillo and Grace Berry were employees at defendant's plant from 1966 and 1973, respectively, until 1982. By January of 1982, both women had been diagnosed by their physicians as having scleroderma-type illnesses including Raynaud's phenomenon which, according to their treating physicians, resulted from their prolonged exposure to polyvinyl chloride degradation products.

During the time of plantiffs' employment, defendant was involved in the manufacturing of plastic products, and used a substance known as polyvinyl chloride (hereinafter PVC) in the production of its products.

PVC is a substance that is formed when vinyl chloride monomers (a gas) undergo polymerization.[1] PVC can exist in powder, pellet and liquid form. The vinyl chloride monomer, the chemical compound that undergoes polymerization, is a highly toxic, dangerous substance. Residue of vinyl chloride can be precipitated from PVC in the manufacturing process.[2] In this case, the pleadings, briefs and evidentiary materials submitted by defendant show that it used PVC in powder, pellet and liquid form in the manufacturing of some of its products, including processes consisting of molding, injecting and coating.

No later than 1974 through reports and notices from the Occupational Safety and Health Administration, Department of Labor (hereinafter OSHA) defendant was made aware that the use of polyvinyl chloride resin[3] in its manufacturing process was shown to be a danger to its employees engaged in those manufacturing processes. It was determined that the toxic vinyl chloride monomer was a degradation product of PVC and was present in manufacturing conditions. Defendant was further informed by OSHA that the standard for exposure to vinyl chloride was being drastically reduced. From the OSHA hearings, industrial users of PVC, including defendant, were directed to monitor their equipment and manufacturing processes to make sure that they fell within the newly-established part per million standard, and were directed to immediately institute feasible engineering, work practice and personal protective controls to reduce employee exposure to at or below the new permissible exposure limit.

Defendant instituted a program to monitor exposure levels of vinyl chloride monomer at the plant where plaintiffs were employed. PVC was used at defendant's plant until 1977 at which time its use was discontinued except in the wire coating division where it was used until 1982.

I

WHERE A MATERIAL ISSUE OF FACT EXISTS WITH RESPECT TO WHETHER AN EMPLOYER KNOWINGLY AND INTENTIONALLY EXPOSED ITS EMPLOYEES TO A HARMFUL, TOXIC SUBSTANCE, IT IS ERROR FOR THE TRIAL COURT TO CONCLUDE, AS A MATTER OF LAW, THAT NO MATERIAL ISSUES OF FACT ARE IN DISPUTE, THEREBY GRANTING SUMMARY JUDGMENT TO THE EMPLOYER.

Plaintiffs argue in their sole assignment of error that the trial court erred by granting summary judgment in favor of defendant since

there was a genuine issue of material fact as to whether defendant committed an intentional tort as defined by law.

In *Van Fossen* v. *Babcock & Wilcox Co.* (1988), 36 Ohio St. 3d 100 the Ohio Supreme Court set forth the standard for determining whether an employer has committed an intentional tort against an employee:

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed. 1984), in order to establish "intent" for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous, process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.

"***

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. *However, the mere knowledge and appreciation of a risk - something short of substantial certainty - is not intent."* (*Blankenship.* v. *Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St. 2d 608, 23 O.O. 3d 504, 433 N.E. 2d 572; and *Jones* v. *VIP Development Co.* [1984], 15 Ohio St. 3d 90, 15 OBR 246, 472, N.E. 2d 1046, explained.) (Emphasis added.) *Van Fossen supra,* paragraphs five and six of the syllabus.

In *Bostic* v. *Connor* (1988), 37 Ohio St. 3d 144, 146, the court stated as follows:

"Summary judgment is appropriate when the following factors have been established:

"*** (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 66 8 O.O. 3d 73, 74, 375 N.E. 2d 46, 47. See, Also, Civ. R. 56(C); and *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 327, 4 O.O. 3d 466, 472, 364 N.E. 2d 267, 274.

The standard for granting summary judgment is high; in an employer intentional tort case, it is no less high. In *Kunkler* v. *Goodyear Tire & Rubber Co.* (1988), 36 Ohio St. 3d 135, at 138 the court, in deciding an intentional tort claim, stated:

"In deciding whether the trial court correctly granted summary judgment to Goodyear, we must follow *Civ. R. 56 and view the record in the light most favorable to the party opposing the motion.* *** Further, the inferences to be drawn from the underlying facts contained in depositions, affidavits, and exhibits *must be construed in the opposing party's favor.* When so construed, the motion must be overruled if reasonable minds could find for the party opposing the motion. ***.

"Moreover, [u]pon motion for summary judgment pursuant to Civ. R. 56, *the burden of establishing that the material facts are not in dispute, and that no genuine issue of fact exists, is on the party moving for summary judgment. Harless* v. *Willis Day Warehousing Co.* (1978), 4 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. However, in that Civ. R. 56(E) requires that a party set forth specific facts showing that there is a genuine issue for trial, such party must so perform if he is to avoid summary judgment. Accordingly, in an action by an employee against his employer alleging an intentional tort, upon motion for summary judgment by the defendant employer, *the plaintiff employee must set forth specific facts which show that there is a genuine issue of whether the employer had committed an intentional tort against his employee."* (Emphasis added.) *Van Fossen, supra,* paragraph seven of the syllabus.

The issue therefore in the present case is twofold: whether the *movant,* in this instance defendant, established that no material issue of fact existed as to its knowledge of a dangerous

procedure or condition within its business operation which was substantially certain to harm the plaintiff and nonetheless continued to expose its employees to such harm, and secondly if the former is true whether plaintiff set forth specific facts which would show that there was a genuine issue of fact as to whether defendant had knowledge of a dangerous procedure or condition within its operation which it knew was substantially certain to harm plaintiffs and required plaintiffs to continue to perform the dangerous task.

Defendant concedes its obligation to be in compliance with the OSHA regulations. Defendant's evidence attached to its motion for summary judgment indicated that it instituted a program within its plant to monitor exposure levels of vinyl chloride and that it was consistently within the OSHA limits. Defendant apparently concludes that because it was in compliance with OSHA, it did not know that a dangerous process existed within its work environment. Defendant's evidence also indicated that plaintiffs' illnesses were not necessarily attributed to the workplace.

Based on defendant's evidence, which indicated it was in compliance with OSHA and thus did not know a dangerous process existed, it became plaintiffs' burden to set forth specific facts which showed that there was a genuine issue as to whether defendant had knowledge that a dangerous process existed within their work environment.

I. Plaintifffs produced evidence which created an issue of fact as to whether the first prong of the *Van Fossen* test was satisfied.

In order to raise an issue of fact under the first prong of the *Van Fossen* test, plaintiffs must produce some evidence which shows defendant had knowledge that a dangerous process existed within its business operation.

Plaintiffs submitted the OSHA regulations which included the record of the hearings held by OSHA in 1974. The OSHA regulations and hearing make it clear that defendant was aware of the health hazards and dangerous propensities of PVC in early 1974. OSHA's drastic reduction of the allowable permissible levels of PVC prior to 1974 of 500 parts per million to an emergency temporary standard of 50 parts per million, to a proposed permanent standard of 1 part per million, clearly put the plastics industry, which included defendant, on notice that PVC was a hazardous substance.

OSHA clearly rejected the plastics industry's argument that their pre-1974 levels

of vinyl chloride did not induce cancer and were safe. OSHA stated that the significance of a lower dose could not be accurately assessed. In fact, OSHA concluded that research didn't indicate whether a safe level of exposure existed at all. The regulations further indicated that testimony of most experts concluded that a quantification of a safe exposure concentration was not possible given the present state of scientific knowledge. OSHA noted that the plastics industry's proposal to change the exposure level later, when improved technology would permit such reduction, would seem to indicate that the plastics industry, to which defendant belonged, had doubts about the safety of the new exposure limit about to be adopted.

It is clear from the OSHA regulations that the new exposure limits for work with PVC substances were not deemed *safe* levels but rather *permissible* levels based upon evidence then available, which OSHA practically conceded could prove harmful in the future. NIOSH, also a part of the 1974 hearings, in fact concluded that vinyl chloride monomers are carcinogenic and that a safe exposure level to a carcinogen cannot be determined.

Given the rapidity with which OSHA changed its permissible levels of vinyl chloride monomers in the workplace and the caution and hesitation by OSHA in arriving at the new levels, it is evident that defendant knew that working with PVC substances presented a health hazard. Further, the OSHA regulations make clear that in the absence of the institution of feasible engineering, work practice and personal protective controls to reduce employee exposure to *at or below the new permissible exposure limit,* a dangerous process would exist within the work environment. In other words, the OSHA regulations made it evident that a violation of the new permissible levels, i.e., noncompliance, would result in exposure of employees to substantial certainty of harm.

Viewing the evidence presented in a light most favorable to plaintiffs, we conclude that plaintiffs successfully rebutted defendant's contention that they were unaware of a dangerous process. An issue of fact exists as to whether the first prong of the *Van Fossen* test was satisfied.

II. Plaintiffs produced evidence which created an issue of fact as to whether the second and third prongs of the *Van Fossen* test were satisfied.

In order to raise an issue of fact under the second and third prongs of the *Van Fossen* test,

plaintiffs must produce some evidence which shows defendant had knowledge that if the employee is subjected to the dangerous process then harm will be a substantial certainty, and, further, that the employer knowingly required the employee to continue performing the dangerous task.

As earlier stated, the defendant's evidence showed that a monitoring program was established within its plant and that the levels of vinyl chloride were consistently at or below the new standards set by OSHA. Defendant argues that *given its compliance* with what the industry thought at the time to be reasonable exposure levels, exists no evidence of a specific intent to injure the plaintiffs.

To contradict defendant's argument and evidence, plaintiffs submitted a statement by Dr. Randall S. Krakauer, the plaintiffs' treating physician and Director of The Rheumatic and Immunologic Disease Section at St. Michael's Medical Center in Newark New Jersey. Dr. Krakauer stated:

"I find that there clearly were vinyl chloride monomer levels in the plant, *and that the measurements were taken in such a way that the levels at the work stations of these two women could not be determined.*"

The final standard adopted by OSHA had a permissible level of 1 part per million of vinyl chloride monomer in the work environment. The OSHA regulations submitted by plaintiffs reveal that PVC users were instructed under its *methods of compliance section* that:

"Employee exposure to vinyl chloride *shall be controlled* to or at below the permissible exposure level. ... *by engineering, work practice and personal protective controls.* (Emphasis added.)

"Dr. Krakauer further stated that:

"It is also clear that *protective measures were not taken to protect workers against the known dangers of aerosolized vinyl chloride monomers.* \*\*\* The random chance of two employees coming down with this disease in one year is extraordinarily small. \*\*\* I believe both Mrs. Stillo and Mrs. Berry had vinyl chloride induced scleroderma-like syndrome due to their exposure during employment at Rubbermaid since there is no history to suggest any other place of exposure." (Emphasis added.)

Plaintiffs' evidence showed 1) that the monitoring was done in a way that was unreliable and undeterminative; and 2) that defendant was not in compliance with the OSHA regulation which called for the introduction of personal protective controls in the work environment. The defendant's record is devoid of any evidence of any personal protective measures instituted to protect workers from the degraded PVC fumes and powders.

Plaintiff Carol Stillo submitted her own affidavit which supports her rebuttal that, despite the known dangers presented by the use of PVC, nothing changed in her work environment. Stillo's affidavit indicated that she worked at defendant's plant from 1966 to 1982. Plaintiff worked in the plastics division at injection molding, compression molding, plastic shelving and also worked in filling orders. Plaintiffs' evidence showed that in the injection molding process, PVC in pellet form was put into a barrel in the injection machine and was heated to 380 degrees Fahrenheit. The pellets then were turned into a liquid and injected into a mold. The finished product would drop out of the machine. The evidence indicated 5 ppm of vinyl chloride in powder form was retained.

Stillo, in her affidavit, testified that if she wasn't busy at her machine, she would use hot wire to seal packages with plastic wrap. Stillo testified that if she was not working on heated PVC, she was working next to machines and processes that used PVC. Stillo stated that no barriers existed in her work environment to separate or isolate her from the processes where PVC was being used. Further she stated that no containers existed for the containment of airborne gases and particles. Stillo attested that at one spot, workers would gather PVC scraps, grind them back into a powder, and put them into a box. When the box got full, Stillo stated, it would be picked up by one of the workers and dumped back into the machine. Stillo related that PVC powder would fly all over and that dust would be on her hands and arms. Stillo stated that when the machines which used PVC were purged, gas and steam surround her for 2 to 3 minutes. At the hot wire station, Stillo stated that every time heat hit the plastic, gas would come up in her face. She testified that in her 15 years at the plant there was no ventilation. Stillo testified that she was not given a respirator or any kind of protective gear, and was never warned of the dangers presented in working with these substances.

Plaintiffs' evidence further indicated that defendant did not change any of its manufacturing processes as it related to them. Stillo testified that the same procedures employed in the early 1970's were the same ones employed in the late 1970's. Plaintiffs'

evidence also indicated that every machine involved in the production of PVC products was not tested, but rather the monitoring was done on a random, as opposed to an inclusive, basis.

To contradict defendant's claim that its compliance with the OSHA regulations entitles it to summary judgment because compliance shows that no evidence of a specific intent to injure existed, we have plaintiffs' evidence which shows: 1) the monitoring required by OSHA was random and undeterminative as it related to plaintiffs; 2) defendant never initiated personal protective measures as required by OSHA; and 3) defendant did not change any of its processes as they related to plaintiffs, and the same procedures employed in the early 1970's were the same ones employed in the late 1970's.

The record demonstrates that noncompliance with the OSHA regulations would cause a dangerous condition in the work environment to exist resulting in harm that was substantially certain to occur to workers. Keeping in mind that the inferences to be drawn from the underlying facts contained in depositions, affidavits and exhibits *must be construed in the opposing party's favor* when ruling on summary judgment, we find that plaintiffs set forth specific facts which showed that a genuine issue existed as to whether defendant was in compliance with the OSHA regulations, and further plaintiffs created a genuine issue of fact as to whether defendant knew that harm was substantially certain to occur and whether defendant continued to allow plaintiffs to be exposed to such harm.

The plaintiffs' assignment of error is well taken. The trial court's grant of defendant's summary judgment is reversed and the matter is remanded to the trial court for further proceedings.

*Judgment reversed,*
*and cause remanded.*

PATTON, C.J., and SWEENEY, J., Concur.

---

[1] Polymerization is a chemical reaction in which two or more small molecules combine to form larger molecules which repeat structural units of larger molecules. Webster's New Collegiate Dictionary (1973-1976) 892.

[2] Plaintiffs were not involved in the manufacturing of vinyl chloride. Rather, they were involved in manufacturing products made with PVC. We recognize that PVC and vinyl chloride are not synonymous.

[3] A resin is defined as any of a large class of synthetic products that have some of the physical properties of natural resins but are different chemically and are used chiefly as plastics. Webster's New Collegiate Dictionary (1973-1976) 985.