JOURNAL ENTRY and OPINION
 I. {¶ 1} Plaintiff-appellant Wayne Koback ("Koback") appeals the trial court's grant of summary judgment in favor of defendant-appellee Tri-Arch, Inc. Koback, a minor at the time of the injuries, was employed at a McDonald's owned by Tri-Arch, when he was injured while cleaning a fryer. Through his father, Koback brought suit against Tri-Arch for intentional tort, negligence and punitive damages.
 {¶ 2} In granting summary judgment in favor of Tri-Arch, the trial court found that Koback had failed to sufficiently show the elements of an intentional tort and further, that because Tri-Arch complied with Ohio's workers compensation system, Koback's negligence claim was disallowed as a matter of law.
 II. A. {¶ 3} The following are the relevant, undisputed facts. Koback began working for McDonald's in 1997. In February of 1999, his general manager Kevin Doull, while wearing plain clothes, began to train him on the fryer. Between that time and the accident (June 11, 1999), Koback observed others clean the fryer and once himself started to clean the fryer, but was stopped by Doull because he (Koback) was not doing it correctly. At the beginning of June, Chris Carlson, who was primarily responsible for cleaning the fryers, spent a couple of days showing Koback the procedure. Carlson, like Doull, did not wear any gear when performing this procedure.
 {¶ 4} Koback claims that he, as a customer of Burger King, had observed a sign in Burger King to the effect that those working fryers should be wearing protective gear. He stated that he asked the fryer-cleaner at McDonald's about protective gear but is not sure what the response was (Koback was not sure whether he was told that no gear was available or that this individual did not wear any). Further, Koback stated that he observed no safety gear at McDonald's.
 {¶ 5} Koback stated that the fryer was the only job where there is a certainty that a person would be injured doing the job as instructed. The reason, according to Koback, was that one would be "mess[ing] around with hot oil" without protective gear. He remembered two others being hurt while working with the fryer. As to the one individual (the above-mentioned Carlson), Koback did not know exactly how the injury occurred. As to the other (Mike Labididi), Koback stated that "It just wasn't touching, [sic] he was actually doing the fryer." Further, Koback claims that Labididi told him that he (Labididi) got hurt when the fryer was "filling back up[,]" which Koback says is the same thing that happened to him. Koback knew about the Labididi's injuries before he suffered his own.
 {¶ 6} On the night in question, a manager asked him to clean the fryers since they were short on help that night. He was also asked to train another employee, John Farley. Koback did not wait for the fryers to cool down. After draining the oil and scrubbing the fryer, and while waiting for the oil to fill back up, Koback saw a "quick splashing of oil[,]" which caused the injuries complained of.
 {¶ 7} Stephen Payne, president of Tri-Arch, stated in his affidavit attached to Tri-Arch's motion for summary judgment, that the fryer cleaning procedure "does not require the employee to handle or dispose of hot oil." He explained that "process begins with the fryer at cooking temperature to heat the oil, the fryer is turned off and is no longer heating when the oil is drained into the filtering system." Payne further stated that "through the course of my more than 34 years of experience in operating McDonald's restaurants, I know of no circumstances wherein an individual was injured in the manner described by Wayne Koback;" that "there has never, to my knowledge, been a serious injury to one of my employees as a result of cleaning or filtering of a fryer;" and "the activity in which Wayne Koback was engaged at the time of his injury would have been an activity that would have occurred on more than 100,000 occasions without an injury such as that described by Wayne Koback[.]" Payne further stated that safety equipment was available to them. Further, Payne himself had performed the cleaning and filtering procedure at issue.
 B. {¶ 8} The trial court granted summary judgment in favor of Tri-Arch. Koback filed a motion for relief from judgment with the trial court and later filed a notice of appeal with this court (number 80152.) This court remanded the matter to the trial court "for the limited purpose of ruling on plaintiffs-appellants' Civ.R. 60(B) motion for relief from judgment." The trial court denied Koback's motion for relief from judgment and this court subsequently granted Koback's motion to reinstate his appeal (number 80152). Koback then filed a notice of appeal with this court to the trial court's denial of his motion for relief from judgment. This case was assigned number 81471. Finally, this court granted Koback's motion to consolidate the two cases.
 C. {¶ 9} Koback brings a total of four assignments of error for this court's review: (1) the trial court erred when it granted Tri-Arch's motion for summary judgment [80152]; (2) the trial court erred when it ruled that the statements of Carlson and Labididi to Koback and Melissa Manning (another McDonald's employee) were inadmissible hearsay [80152]; (3) the trial court erred when it denied Koback's motion for relief from judgment [81471]; and (4) the trial court abused its discretion when it denied Koback's motion for relief from judgment [81471].
 Summary Judgment A. {¶ 10} The applicable review standard of a trial court's grant of summary judgment was nicely stated by this court:
 {¶ 11} "We review the trial court's granting of summary judgment de nov[o] in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. [Citation omitted.] To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. [Citation omitted.] If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. [Citations omitted.] Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. [Citations omitted.]" Rodic v. Koba (Dec. 7, 2000), Cuyahoga App. No. 77599, at *4-6.
 B. {¶ 12} To find an intentional tort by an employer against his employee, the plaintiff must show:
 {¶ 13} "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph one of the syllabus (Van Fossen v. Babcock Wilcox Co.
[1988], 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph five of the syllabus, modified and explained). Further, "[t]o establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established" and "the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe, paragraph two of the syllabus (Van Fossen, paragraph six of the syllabus, modified and explained).
 {¶ 14} Plaintiff must show that defendant compelled him to work under conditions, knowing that it was substantially certain that he would be injured. See Fultz v. Baja Boats, Inc. (Feb. 18, 1994), Crawford App. No. 3-93-10. The standard is not what the employer should have known, but what the employer actually knew. Id.
 {¶ 15} The two sides disagree as to whether the handling of hot oil constitutes a dangerous procedure. Koback argues that the handling of hot oil is a dangerous condition in itself and, essentially, that the lack of protective clothing constituted a dangerous condition. This issue is irrelevant if the other prongs of the Fyffe/Van Fossen test are not met:
 {¶ 16} "[E]vidence of a dangerous process only creates an issue of fact as to prong one of Van Fossen. A dangerous process by itself does not satisfy the requirement of knowledge of a substantially certain injury. The fact that Charles Oberlin put himself in the same position as his men, the total absence of prior accidents, coupled with the fact that he had no knowledge that it was unsafe to operate this lift with a workmans' [sic] platform or on a side slope with the boom extended, when combined, wholly refute the existence of an issue of fact as to prong two of Van Fossen." Myers v. Oberlin Processing, Inc.
(Sept. 27, 1996), Seneca App. No. 13-96-20.
 C. {¶ 17} We conclude that Koback has failed to carry his burden. At the very least, Koback was unable to show that Tri-Arch had "knowledge * * * that if the employee [was] subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee [would have been] a substantial certainty." Fyffe, paragraph one of the syllabus. The testimony of Tri-Arch's president (that, to his knowledge, this procedure had been performed over 100,000 times without serious incident and without resulting in injury similar to Koback's) is unrefuted. As the trial court concluded, "reasonable jurors could not conclude that Tri-Arch knew to a substantial certainty that a person would be burned by hot grease splashing out of the fryer under the circumstances of this case."
 {¶ 18} Further, the trial court was correct in holding that Koback's negligence claim must fail as a matter of law since Tri-Arch is a complying company in the Ohio workers' compensation system. Koback's sole remedy for injuries caused by anything other than an intentional tort is through the worker's compensation system. Blankenship v.Cincinnati Milacron Chem., Inc. (1982), 69 Ohio St.2d 608.
 Hearsay A. {¶ 19} Koback argues that the statements made by Carlson and Labididi to Koback are not inadmissible hearsay and the trial court erred in not considering those statements. Carlson was not deposed and did not testify, nor did he offer any statement regarding their alleged injuries. Labididi testified briefly at the Industrial Commission hearing. Labididi's testimony concerning his injury was that "It just splashed at me. As I used the spoon, I went all the way down to the bottom, the pump comes on and when you hit it, its' got to go somewhere." Koback also offers Manning's affidavit, which states that Carlson and Labididi never used protective gear and that "Labididi also has gotten burned, but did not go to the hospital."
 {¶ 20} Koback argues that the statements are admissible under the hearsay exception found in Evid.R. 801(D)(2), which allows hearsay statements that are admissions of a party-opponent.[1] Finally, Koback asserts that Carlson and Labididi were "authorized by Tri-Arch, as a matter of law, to make statements about injuries" they had received in the course and scope of their employment.
 B. {¶ 21} The portion of Evid.R. 801(D) relevant to Koback's argument provides that a statement is not hearsay if "the statement is offered against a party and is * * * a statement by his * * * servant concerning the matter within the scope of his * * * employment, made during the existence of the relationship[.]" Evid.R. 801(D)(2)(d).
 C. {¶ 22} As Koback correctly points out, the above rule is entitled "admission by party-opponent." Here, the statements are inadmissible because they are not admissions made by a servant and/or agent of Tri-Arch concerning the matter within the scope of their employment. The matter at issue is Tri-Arch's actual knowledge. The statements at issue are those made to Koback by Labididi and Carlson that they were hurt while working a fryer. Those statements are not admissions by Tri-Arch that they knew that injuries had occurred. Had Koback offered a statement by a manager to the effect that "that's the second time this has happened," the trial court would have abused its discretion in not admitting this admission by a party-opponent. But here, Labididi and Carlson were not authorized as managers and therefore they had no power to bind Tri-Arch with their statements. In other words, their statements — offered to show that Tri-Arch had actual knowledge of the potential dangers — were outside the scope of their employment. See, e.g., Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.
(C.A.6, 1999), 176 F.3d 921, 928 ("There is a critical difference between making a statement while one is an employee and having the actual or implied authority to make such a statement on behalf of your employer. The test is whether the statement concerns a matter within the scope of the agency or employment.").
 {¶ 23} The crux of an employer intentional tort case is the actual knowledge of the employer. An injured employee's statement about his injury made to another employee does not constitute an admission by the employer (or the employer's agent) that the employer had actual knowledge of the potentially dangerous conditions of the workplace. This is especially true here, where the details of the other injuries remain obscure. We therefore hold that the trial court did not abuse its discretion in declaring the statements to be inadmissible hearsay. Koback's argument is not well taken.
 IV. Motion for Reconsideration A. {¶ 24} Under its two assignments of error brought in case number 81471, Koback argues that the trial court improperly denied his motion for relief from judgment. Koback argues separately that by denying his motion, (1) the trial court erred and (2) the trial court abused its discretion. The proper standard of review is whether the trial court abused its discretion and we will discuss both assignments together under the proper standard.
 B. {¶ 25} "A motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77 (citations omitted).
 {¶ 26} Koback argues that he has met the requirements of Civ.R. 60(B)[2] and that the trial court therefore erred by denying his motion for relief from judgment. Specifically, Koback argues that he has met the requirements as spelled out by the Supreme Court:
 {¶ 27} "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec. v. ARC Industries (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
 C. 1. {¶ 28} Handling the last prong of GTE Automatic Elec. v. ARC
first, Koback filed his motion for relief from judgment eight days after the trial court's ruling on Tri-Arch's motion for summary judgment was entered. Koback has therefore filed within a reasonable time.
 2. {¶ 29} Moving to the first prong, Koback argues that he has a meritorious claim to present. In support of this argument, Koback states that testimony from the hearing held before the Industrial Commission on April 16, 2000 shows that Tri-Arch did have knowledge of the potential for injury.
 {¶ 30} In other words, Koback argues that new evidence presented at the hearing shows that he has a meritorious claim. Because Koback relies on the new evidence to support his argument that he has a meritorious claim, and because the issue of new evidence is one of the grounds under prong 2 of the GTE Automatic test regarding Civ.R. 60(B), we will address the matter below.
 3. {¶ 31} Under prong three, Koback had to show the trial court that he was entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). Koback argues that he was entitled to relief under numbers (2) "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);" (3) "fraud, misrepresentation, or other misconduct of Tri-Arch"; and (5) "any other reason justifying relief from the judgment."
 a. Newly Discovered Evidence {¶ 32} Koback argues that the testimony of Labididi and Koback's mother Sharon at the Industrial Commission hearing constitute new evidence that warrants relief from judgment. At this hearing, Labididi testified that he was injured while operating a fryer at the same restaurant as Koback. Sharon testified that Labididi was involved in an incident involving a fryer and that he said to her and to a manager, "Look what happened to me."
 {¶ 33} Koback says that this testimony "is a direct refutation of the information provided by" Tri-Arch, which is that Tri-Arch had no knowledge that the cleaning of the fryers was a dangerous process and that it had no knowledge that an employee was substantially certain to be injured while cleaning the fryers.[3]
 {¶ 34} As the trial court points out, the hearing was held on April 16, 2001 and the trial court did not grant Tri-Arch's motion for summary judgment until August 1, 2001. Koback argues that he had obtained the affidavit of Labididi but that "the type of information given at the Industrial Commission Hearing was previously unkown."
 {¶ 35} This is simply untrue. Koback himself testified in his deposition, taken December 20, 2000, that Labididi had told him that he was injured while working a fryer. Labididi's testimony before the hearing added no new information. Further, while Sharon's testimony at the hearing may have been new in the sense that a manager may have been informed of Labididi's injury, it cannot be held to be new in the sense that Koback could not have discovered it through due diligence. Sharon is Koback's mother. To suggest that her testimony at the April 16, 2001 hearing was the first time the information was available to Koback is literally incredible.
 {¶ 36} Finally, as the trial court points out, the court did not issue a ruling until August 1, 2001 — three and an half months after the hearing. Assuming that the transcript from this hearing was not readily available, Koback could have at the very least filed an amended motion in opposition to Tri-Arch's motion for summary judgment that included affidavits of Labididi and Sharon describing their "new" evidence.
 {¶ 37} We therefore hold that the trial court did not abuse its discretion in ruling that Koback had not met the due diligence requirement to offer newly discovered evidence. Koback's argument is not well taken.
 b. Fraud, Misrepresentation or Other Misconduct {¶ 38} Here, Koback argues that Payne's sworn statement that he was not aware of any injuries similar to Koback's constituted a fraud upon the court. Payne's statement is fraudulent, argues Koback, because it is "directly" contradicted by Labididi and Koback's testimony, via affidavit.
 {¶ 39} As the trial court points out, there is no evidence that Labididi's injury was substantially similar to Koback's. Without such similarity, Payne's statement that he knew of "no circumstances wherein an individual was injured in the manner described by Wayne Koback" is unrefuted. (Emphasis added.)
 C. Any Other Reason Justifying Relief {¶ 40} Here, Koback argues that, if none of the other reasons support his motion for relief from judgment, he is entitled to relief because "reasonable minds could have concluded based on the evidence presented that * * * Tri-Arch intentionally injured" Koback. The trial court, however, decided in its order granting Tri-Arch's motion for summary judgment that, pursuant to Civ.R. 56, reasonable minds could not find in favor of Koback. Nothing presented shows that Tri-Arch had any knowledge of potential injury or in fact that previous similar injuries had occurred at all.
 V. {¶ 41} Therefore, we hold that the trial court did not err in granting Tri-Arch's motion for summary judgment, did not abuse its discretion in considering statements made by Carlson and Labididi to be hearsay, and did not abuse its discretion in denying Koback's motion for relief from judgment. We therefore affirm.
It is ordered that appellee recover of appellants its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] {¶ a} "(D) A statement is not hearsay if:
{¶ b} "* * *
 {¶ c} "(2) * * * [t]he statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy upon independent proof of the conspiracy." Evid.R. 801.
[2] "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this subdivision (B) does not affect the finality of a judgment or suspend its operation.
"The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules." Civ.R. 60(B).
[3] It is worth noting again that Tri-Arch's president Stephen Payne submitted an affidavit in which he states that "throughout the course of my more than 34 years of experience in operating McDonald's restaurants, I know of no circumstances wherein an individual was injured in the manner described by Wayne Koback."