OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Plaintiffs-Appellants, Scott and Candee Stone, appeal the decision of the Mahoning County Court of Common Pleas that granted summary judgment to Defendant-Appellee, North Star Steel Company, on the Stones' claim of an employer intentional tort. The Stones argue the trial court erred because there were genuine issues of material fact regarding each element of the claim.
 {¶ 2} In order to prove an employer intentional tort, an employee must prove that a dangerous condition exists, that the employer knew the employee would be injured by that dangerous condition with substantial certainty, and that the employer required the employee to work in the face of that dangerous condition. In this appeal, the parties dispute whether North Star knew with substantial certainty whether Scott would be injured by the dangerous condition. Given the facts of this case, the trial court properly concluded that no reasonable fact-finder could conclude that North Star could have known with substantial certainty that the dangerous condition would injure Scott. Accordingly, the trial court's decision is affirmed.
 FACTS {¶ 3} On February 10, 2000, Scott was employed by North Star when he was injured on the job. Scott had only been working for North Star for two weeks as part of the maintenance crew. On the day in question, he was told to follow his immediate supervisor so they could repair a part of North Star's facility. While traveling to the site of the repair, Scott, his supervisor, and a co-worker walked on a walkway behind a furnace. The walkway was wide enough for two people to walk abreast, but there was an unguarded hole on one side of the walkway. This hole was necessary so the furnace could tilt to pour molten steel. North Star knew that the hole was present and had been trying to obtain safety netting to cover the hole since the furnace was installed. It also required that its employees working in the area wear safety harnesses. In addition, a portion of the walkway was attached to the furnace and the walkway was split where the portion not attached to the furnace and that attached to the furnace met. Sometimes the walkway on one portion of the split could be two inches higher than the walkway on the other side of the split, although there is no testimony concerning the level of difference at the split on the day of the accident. While walking on this walkway, Scott apparently tripped where the two portions of the walkway met. Scott fell through the hole when trying to regain his balance and injured himself.
 {¶ 4} On June 29, 2000, Scott filed a complaint against North Star and another defendant. Scott voluntarily dismissed that complaint on February 25, 2002, but that same day, Scott and his wife, Candee, filed another complaint against those same two defendants. Each defendant filed a Civ.R.12(B)(6) motion to dismiss and the trial court granted both motions. The Stones appealed that decision to this court. In a decision styled Stonev. North Star Steel Co., 152 Ohio App.3d 29, 2003-Ohio-1223, this court affirmed the trial court's decision to dismiss all of the Stones' actions against the defendants except for their employer intentional tort claim against North Star. This court then remanded the case for further proceedings.
 {¶ 5} After the case was remanded, North Star moved for summary judgment and attached portions of five depositions to its motion. In addition, its motion stated that North Star was filing three of those depositions contemporaneously with the motion. But although North Star filed a notice that it was filing those depositions, it did not do so in this case.
 {¶ 6} The Stones filed a memorandum responding to North Star's motion for summary judgment, citing an additional deposition and quoting from portions of the depositions attached to North Star's motion for summary judgment, although from different portions of those depositions. On the same day, it also filed a notice that it was filing three depositions. Nevertheless, it also did not actually file those depositions in this case.
 {¶ 7} North Star replied to the Stones' memorandum and attached an affidavit to its reply.
 {¶ 8} On February 26, 2004, the trial court granted North Star's motion for summary judgment. It concluded that there was not a genuine issue of material fact regarding whether North Star knew with substantial certainty that Scott would be injured.
 {¶ 9} The Stones appealed the trial court's February 26th judgment entry to this court and that appeal was given Case Number 04 MA 45. At oral argument, we informed the parties that the depositions they referred to in their briefs were not in the record of this case. We later discovered that they were filed under a different case number. Realizing that either the parties or the clerk may have mistakenly filed the depositions under the wrong case number, we remanded the matter to the trial court on March 22, 2005, so the parties could obtain relief from the trial court's judgment and have it consider those depositions.
 {¶ 10} On remand, the Stones filed what was essentially a Civ.R. 60(B) motion for relief from judgment based on the fact that the depositions were mistakenly filed under a different case number. The trial court granted that motion and reconsidered its decision. Nevertheless, on June 3, 2005, the trial court again granted summary judgment to North Star. It is this judgment which is the subject of this appeal.
 Standard of Review {¶ 11} In their sole assignment of error, the Stones argue:
 {¶ 12} "The trial court erred in entering summary judgment in Defendant-Appellee's favor below."
 {¶ 13} When reviewing a trial court's decision to grant summary judgment, we apply the same standard as the trial court and, therefore, engage in a de novo review. Parenti v. GoodyearTire Rubber Co. (1990), 66 Ohio App.3d 826, 829. Under Civ.R. 56, summary judgment is only proper when the movant demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Doe v. Shaffer,90 Ohio St.3d 388, 390, 2000-Ohio-0186.
 {¶ 14} In a motion for summary judgment, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresherv. Burt, 75 Ohio St.3d 280, 296, 1996-Ohio-0107. The nonmoving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. "In order to overcome an employer-defendant's motion for summary judgment on an intentional tort claim, the plaintiff must set forth specific facts showing there is a genuine issue as to whether the employer committed an intentional tort." Burgos v.Areway, Inc. (1996), 114 Ohio App.3d 380, 383.
 Employer Intentional Tort {¶ 15} The workers' compensation statutes provide employees with the primary means of compensation for injury suffered in the scope of employment, but an employee may institute a tort action against the employer when the employer's conduct is sufficiently "egregious" to constitute an intentional tort. Sanek v. DuracoteCorp. (1989), 43 Ohio St.3d 169, 172. When an employer's conduct is sufficiently egregious to constitute an intentional tort, the employer's act occurs outside the scope of employment and, thus, the employee's recovery is not limited to the workers' compensation provisions. Blankenship v. Cincinnati MilacronChemicals, Inc. (1982), 69 Ohio St.2d 608, 613, footnote 7.
 {¶ 16} The Stones allege that North Star committed an intentional tort against Scott. In order to recover against an employer for an intentional tort, an employee must prove the three elements the Ohio Supreme Court described in Fyffe v.Jeno's, Inc. (1991), 59 Ohio St.3d 115.
 {¶ 17} "[I]n order to establish `intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Id. at paragraph one of the syllabus.
 {¶ 18} The primary concern in any case where an employee is claiming his employer committed an intentional tort against him is whether the employer, "through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibsonv. Drainage Products, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, ¶27. "[I]f the injured employee fails to present sufficient evidence to support any one of the three requirements, summary judgment in favor of the employer is appropriate. Hunter v.Interpak, Inc., 11th Dist. No. 2001-L-198, 2002-Ohio-7149, ¶ 14.
 {¶ 19} In this case, the trial court found that North Star knew of a dangerous condition in its business operation, but granted summary judgment to North Star based on Fyffe's second and third prongs. The Stones argue this is error because there are genuine issues of material fact regarding whether North Star knew with substantial certainty that Scott would be injured by the dangerous condition and whether it required him to do the task regardless of this knowledge. We disagree with the Stones and conclude the trial court properly granted summary judgment to North Star on Fyffe's second prong. Thus, we will not address whether there is a genuine issue regarding Fyffe's third prong.
 Substantial Certainty {¶ 20} The second prong of the Fyffe test requires that the plaintiff demonstrate that the employer was substantially certain that an employee would be injured if exposed to the dangerous condition. As both this and other courts have stated, "[t]his is a difficult standard to meet." McGee v. Goodyear Atomic Corp.
(1995), 103 Ohio App.3d 236, 246; Crnarich v. United Foundries,
7th Dist. No. 02 CA 128, 2003-Ohio-4458, ¶ 21; Hunter at ¶ 19.
 {¶ 21} "To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Fyffe at paragraph two of the syllabus.
 {¶ 22} The Ohio Supreme Court described this concept differently in Van Fossen v. Babcock Wilcox Co. (1988),36 Ohio St.3d 100.
 {¶ 23} "There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an `intentional tort' and therefore an exception, under Blankenship [v. CincinnatiMilacron Chemicals, Inc. (1982), 69 Ohio St.2d 608,] or Jones
[v. VIP Development Co. (1984), 15 Ohio St.3d 90], to the exclusivity of the [Workers' Compensation] Act." Id. at 117.
 {¶ 24} Under the Fyffe test, if a dangerous condition is substantially certain to injure an employee, intent is inferred.Goodin at 218, citing Harasyn v. Normandy Metals, Inc.
(1990), 49 Ohio St.3d 175. "Thus, the employee need not illustrate that the employer subjectively intended to `accomplish the consequences.'" Id. "What constitutes a `substantially certain' result will vary from case to case based on the facts involved." Richie v. Rogers Cartage Co. (1993),89 Ohio App.3d 638, 644.
 {¶ 25} At the time of his injury, Scott was following his supervisor to an area of North Star's plant to do some maintenance. While traveling to the site of the repair, Scott, his supervisor, and a co-worker walked on a walkway behind a furnace. The walkway was wide enough for two people to walk abreast, but there was an unguarded hole on one side of the walkway. This hole was necessary so the furnace could tilt to pour molten steel. North Star knew that the hole was present and had been trying to obtain safety netting to cover the hole ever since the furnace was installed. It also required that its employees working in the area wear safety harnesses. A portion of that walkway was attached to the furnace and would move when the furnace was operating. Thus, the walkway split where the movable portion attached to the furnace would meet the permanent portion attached to the building. There was approximately a two-inch gap at this split and one level could be as much as two inches higher than another, although there is no testimony concerning the level of difference at the split on the day of the accident. While walking on this walkway, Scott apparently tripped where the two portions of the walkway met. Scott fell through the hole when trying to regain his balance and injured himself.
 {¶ 26} We cannot conclude that a reasonable fact-finder would decide that these facts create a genuine issue of material fact regarding whether North Star knew with substantial certainty that Scott would be injured. Clearly, North Star knew of and appreciated the danger posed by the hole. Every witness familiar with the scene testified that the walkway was divided where the portion attached to the furnace abutted the portion attached to the building. Near this point, there was a large, unguarded hole which a man could fall through. Although the area was well lit, there was no warning about either the small gap between the adjoining walkways or the hole next to the walkway.
 {¶ 27} North Star actively took measures to prevent someone from falling through that hole, such as requiring that employees working in the area wear a safety harness. It also actively sought some sort of safety device, such as netting, which could be installed to prevent a fall. The maintenance general supervisor for that area asked that these safety devices be installed and he testified in his deposition that he heard that "the same incident occurred" at another plant containing a similar furnace, walkway, and hole. However, no one working at North Star had yet had an accident at the site and it is unclear exactly how analogous the accident at the other plant was to Scott's accident.
 {¶ 28} These facts all demonstrate that North Star knew and appreciated that the unguarded hole posed a danger, especially since the gap between the adjoining portions of the walkway posed a tripping hazard. But they do not show that North Star knew with substantial certainty that Scott Stone would be injured by the dangerous condition. North Star had not had anyone injured by this condition; they had not even had any near misses.
 {¶ 29} Furthermore, there is no reason in the record to believe that Scott was more susceptible to the danger posed by this condition than any of North Star's other employees. For example, Scott's allegedly poor training and lack of experience at this job could not have materially contributed to his fall. The fact that a person's employment was short-lived or the fact that he may have been poorly trained contributed to the accident may be relevant, or even crucial, in some cases. See Vermett v.Fred Christen Sons Co. (2000), 138 Ohio App.3d 586, 603-604. In those cases, the employee was asked to perform skilled tasks, such as running a machine. Obviously, a poorly trained employee, or one with minimal experience, is at a much greater risk of being injured when performing a skilled task than an employee who is experienced and/or well trained. But in this case, Scott was not performing a skilled task when he was injured. Thus, neither his poor training nor his lack of experience at this job demonstrate that North Star knew with substantial certainty that harm would occur by this particular danger.
 {¶ 30} Given the facts in this case, we cannot conclude that any reasonable fact-finder would find that there is a genuine issue regarding whether North Star knew with substantial certainty that Scott would be injured by this dangerous condition. Of course, this conclusion only means that the Stones cannot prove that North Star intentionally injured Scott; it does not mean that North Star is free from all fault. But the legislature has limited the Stones' recovery for all but intentional injuries to those available in the workers' compensation system. The trial court properly granted summary judgment to North Star on the Stones' intentional tort claims and the Stones' arguments to the contrary are meritless.
 Conclusion {¶ 31} It is difficult to prove that an employer knew with substantial certainty that an employee will be injured by a dangerous condition in the workplace. In this case, the evidence shows that North Star knew of and appreciated the danger, but the Stones have not introduced evidence creating a genuine issue of material fact regarding whether North Star understood with substantial certainty that this danger would injure Scott. Accordingly the judgment of the trial court is affirmed.
Donofrio, J., concurs.
Waite, J., concurs.